EASTERN DISTRICT PIECE DYE WORKS, INC., Respondent, *v.* THE TRAVELERS INSURANCE COMPANY, Appellant.

Insurance (life) — warranties and misrepresentations — statute (Insurance Law [Cons. Laws, ch. 28], § 58) construed and applied — action to recover on policy — defenses of breach of warranty and misrepresentations examined and held that statements made by applicant were not false or fraudulent as matter of law — evidence — erroneous admission of statements made by insured after policy was issued and in force — when counsel did not waive jury trial — erroneous dismissal of complaint.

1. Under the statute (Insurance Law [Cons. Laws, ch. 28], § 58) a statement in an application for a policy of life insurance constituting or having the effect of a warranty, whereof a breach would necessarily and *ipso facto* avoid the policy, must be characterized by and include the element of fraud which ordinarily would be established by proof that the person making it knew that the statement was false, and wherefrom could be inferred an intent to deceive and cheat. A misstatement, even though stated in the form of a warranty, if made in good faith and without this element of fraud, passes into the same class as an ordinary representation and becomes a defense to the policy only if material. The effect of a misrepresentation was left unchanged by the statute. If material, it constitutes a defense, although made innocently and without any feature of fraud; it is sufficient that it was material as an inducement for the issue of the policy, and was untrue.

2. Where an insurance company defending an action to recover upon a policy of life insurance upon the ground, among others, of alleged misstatements in the application made by the insured for the policy, alleged in its answer that the applicant made certain " declarations " as to her physical condition which she warranted to be true;

## 442    E. D. P. DYE WORKS v. TRAVELERS INS. CO.

that her said declarations, all of which were "warranted" to be true, were not true, this was a way of stating that the applicant made certain warranties, and it is chargeable with knowledge of the statute (Insurance Law, § 58) and of the distinction it makes between warranties and representations. Hence, under the statute, fraud must be proved in order to establish such a warranty.

3. In the application for insurance upon which the policy in question was issued, the applicant stated: "I am in sound condition mentally and physically." I have never had "any bodily or mental infirmity or deformity." Such statement must be construed as meaning a deformity or an infirmity of a substantial character which apparently in some material degree impairs the physical condition and health of the applicant and increases the chance of that death or sickness against which the insurance company is asked to issue insurance, and which if known would have been liable to deter the insurance company from issuing the policy. It appeared that, thirty years before making the application, the applicant had received in childbirth a laceration of the perineum or related parts. A jury could have found that her statement that she was in sound condition physically and had not been disabled and received medical and surgical attention within the preceding five years was true. So far as concerns an intestinal or rectal abnormality discovered while she was being operated upon after the issuance of the policy the evidence is undisputed that this condition had existed from birth, in all probability was never known of by her and did not in any degree interfere with the normal operation of her organs. As to all these statements a jury might say that the applicant was not guilty of any intentional falsification or fraudulent intent. Defendant did not establish as matter of law that fraud surrounded or entered into them and thereby affected warranties under the statute. Hence it was error to hold otherwise as matter of law, and to dismiss the complaint.

4. Upon the view urged by defendant that its answer alleged misrepresentation instead of warranties in procuring the policy, the conclusion must still be reached that the question whether this defense was established was one for the jury, and that it was error to dismiss the complaint.

5. Upon the trial an interne, in the hospital where the insured had gone for an operation to remedy the laceration, was permitted to state what the applicant told him about the laceration and the effects thereof. This evidence was incompetent. The statements were made long after the policy had been issued for the benefit of the plaintiff herein and there is no rule which permits an applicant for an insurance policy thus to destroy the rights of the insured to whom a policy has been issued.

6. The question of the waiver of the right to go to a jury upon the issues of fact in a case is largely one of intent and the fact that, upon defendant's motion to dismiss the complaint herein, the counsel for the plaintiff made a motion for a direction of a verdict, did not constitute a waiver of the right to go to the jury where, subsequently, but before the case was formally disposed of, plaintiff's counsel argued that he was entitled to have the jury pass upon the questions which had been tried, and it was understood that plaintiff did not intend to waive, but rather to insist upon his right to go to the jury. (*Swift* v. *Mass. Mutual Life Ins. Co.*, 63 N. Y. 186 [193]; *Rawls* v. *American Mutual Life Ins. Co.*, 27 N. Y. 282, distinguished.)

*Eastern District Piece Dye Works* v. *Travelers Ins. Co.,* 198 App. Div. 610, affirmed.

(Argued December 7, 1922; decided January 9, 1923.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 25, 1921, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

*William J. Moran* for appellant.   Appellant was under no legal duty either to plead or prove that the insured's representations herein were fraudulent.   (*Rakov* v. *Bankers Life Ins. Co.*, 225 N. Y. 721; *Bollard* v. *New York Life Ins. Co.*, 228 N. Y. 521; *Stanulevich* v. *St. Lawrence Life Assn.*, 228 N. Y. 586; *Sparer* v. *Travelers Ins. Co.*, 185 App. Div. 862; *Kasprzyk* v. *Met. Life Ins. Co.*, 79 Misc. Rep. 263; *Donley* v. *G. F. Ins. Co.*, 184 N. Y. 113; *Gaines* v. *F. & C. Co.*, 188 N. Y. 411.)   Appellant's answer sufficiently alleges the facts for a rescission, and its bill of particulars did not limit the answer.   (*Sparer* v. *Travelers Ins. Co.*, 185 App. Div. 862; *Reader* v. *Haggin*, 114 App. Div. 112; *Hein* v. *Honduras Syndicate*, 138 App. Div. 768; *Gebhard* v. *Parker*, 120 N. Y. 36; *Kaufman* v. *Hopper*, 220 N. Y. 188.)   The Appellate Division erred regarding plaintiff's failure to move for leave to go to the jury.   (*Koehler* v. *Adler*, 78 N. Y. 287; *Trimble* v. *N. Y. Central R. R. Co.*, 162 N. Y. 84; *Sutton* v. *Vander-*

veer, 122 N. Y. 654; *Thompson* v. *Simpson*, 128 N. Y. 284.)   The testimony of the interne Hirsch was material and competent.   (*Swift* v. *Mass. Mut. L. Ins. Co.*, 63 N. Y. 186; *Smith* v. *N. B. Society*, 123 N. Y. 85; *State Bank* v. *Brockton F. J. Co.*, 208 N. Y. 492.)

*Louis Marshall* and *Bernhard Bloch* for respondent. The second defense proceeds solely on the theory that there had been a breach of warranty by the insured of declarations contained in the application.   Hence, in order to sustain this defense under section 58 of the Insurance Law, it became incumbent upon the defendant to prove that the insured had been guilty of fraud in procuring the policy of insurance.   This necessarily was a question for the jury.   (*Archer* v. *Equitable L. Assur. Society*, 218 N. Y. 18; *Baumann* v. *P. A. Ins. Co.*, 225 N. Y. 480; *Moore* v. *Prudential Casualty Co.*, 170 App. Div. 849; *Bloomquist* v. *Farson*, 222 N. Y. 380; *Canadian Agency, Ltd.*, v. *Assets Realty Co.*, 165 App. Div. 96; *Rakor* v. *Bankers L. Ins. Co.*, 164 App. Div. 645; 176 App. Div. 919; 225 N. Y. 521.)   In any event the court should have submitted to the jury the question as to whether or not the statements made by the insured in the application were true or untrue.   Was she in sound condition mentally or physically?   Had she any bodily or mental infirmity or deformity?   Was she disabled? Had she received medical or surgical treatment within five years?   (*Barnes* v. *Fidelity M. L. Assn.*, 191 Penn. St. 618; *Grattan* v. *Met. Life Ins. Co.*, 92 N. Y. 274; *Peacock* v. *New York Life Ins. Co.*, 20 N. Y. 293; *Manhattan Life Ins. Co.* v. *Carder*, 82 Fed. Rep. 986; *Goucher* v. *Northwestern Traveling Men's Assn.*, 20 Fed. Rep. 596; *Hann* v. *National Union*, 97 Mich. 513; *Jeffrey* v. *United Order of Golden Cross*, 97 Me. 176; *Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala. 467, 476; *Court of Honor* v. *Dinger*, 221 Ill. 176; 77 N. E. Rep. 557; *American Order of Protection* v. *Stanley*, 97 N. W. Rep. 467.)   The plain-

tiff did not waive its right to have the questions of fact arising in this case determined by a jury. (*Spirer* v. *Travelers Ins. Co.*, 185 App. Div. 861; *Koehler* v. *Adler*, 78 N. Y. 287; *Sutter* v. *Vanderveer*, 122 N. Y. 654; *Thompson* v. *Simpson*, 128 N. Y. 271; *Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y 84.)   Error was committed in admitting the testimony of Dr. Hirsch and Exhibit B, the hospital record. (*Rawls* v. *A. L. Ins. Co.*, 36 Barb. 359; 27 N. Y. 282; *Swift* v. *Mutual Life Ins. Co.*, 63 N. Y. 186; *McGinley* v. *United States Life Ins. Co.*, 8 Daly, 390; 77 N. Y. 495; *Edington* v. *Ætna Life Ins. Co.*, 13 Hun, 543; *Smith* v. *National Benefit Society*, 123 N. Y. 90; *Barnett* v. *Prudential Ins. Co.*, 91 App. Div. 435; *Paige* v. *Cagwin*, 7 Hill, 361; *Tilson* v. *Terwilliger*, 56 N. Y. 277; *Van Gelder* v. *Van Gelder*, 81 N. Y. 625; *Truax* v. *Slater*, 86 N. Y. 630; *Tabor* v. *Van Tassel*, 86 N. Y. 642; *Hutchins* v. *Hutchins*, 98 N. Y. 56; *Merkle* v. *Beidelman*, 165 N. Y. 21; *Tierney* v. *Fitzpatrick*, 195 N. Y. 433.)

HISCOCK, Ch. J.   The action is brought to recover on an insurance policy issued by the defendant upon the application of one Leontine Klein (and another whose part is immaterial) upon the life of said Klein and payable on proof of death to the plaintiff, of which she was the principal officer.   The application was dated June 24, 1919, the policy was issued September 4 of the same year and Mrs. Klein died November 26, 1919, as the result of a major surgical operation.

The defendant refused to pay the policy and when this suit was brought to recover thereon interposed two defenses, one of purported or attempted rescission and one based upon alleged misstatements in the application made by the insured for the policy.   These defenses will be considered more fully hereafter when there have been set out the various facts which led up to and were involved in them.

In her application for the policy Mrs. Klein stated: "I am in sound condition mentally and physically."

" I have never had any bodily or mental infirmity or deformity." " I have not been disabled nor have I received medical or surgical attention within the past five years." It appeared without substantial contradiction and could have been found by a jury that about thirty years before making her application Mrs. Klein received in childbirth a laceration of the perineum or related parts, the extent thereof not being disclosed; that such a laceration was nothing more than that suffered by forty per cent of women bearing children and that it had never interfered with the applicant's general health or with her capacity for enjoying life and for business activity which she exercised in an unusual degree as the president of the plaintiff; that some time " about six or eight months before the operation " which resulted in Mrs. Klein's death her family physician spoke to one of the surgeons at the hospital where she died about performing an operation for this laceration, which was an advisable course to pursue and a minor operation; that when the operation was undertaken the surgeon discovered some tissue which was thought to be cancerous and also an abnormal intestinal or rectal formation which finally led him to perform a major operation which resulted in the death of the insured; that as a matter of fact the suggestion of cancerous tissue was entirely unfounded and the abnormal formation which led to the fatal operation had existed from birth, did not in any manner interfere with the normal operation of the parts in question and could not have been known by the insured; that the death of the patient was not in any manner the result of the lacerations or of an operation to cure the same.

In addition to the foregoing evidence a witness who was an interne at the hospital where the operation upon Mrs. Klein was performed was allowed, over objection and exception, to testify in substance that at the time of such operation the former told him that she was " torn " thirty years before and had a falling of the

womb; that she had but little trouble until three years before when she began to notice a mass protruding from the vagina the size of a hazel nut which gave no pain or discomfort and no urinary or rectal symptoms; that the condition had remained practically the same; that three weeks before, the patient suddenly began to feel a sensation of pressure on bladder and rectum, also as if something was giving way in the pelvis; the symptoms were not very severe but the patient felt that the time had at last arrived when an operation should be performed.

Of the defenses set up by the defendant the one attempting or purporting to set forth facts by way of rescission has practically disappeared from consideration in the arguments now addressed to us and does not require discussion. The other defense of misstatements in the application relied upon presents various questions and an accurate statement of some of its important allegations becomes material. It alleges that the policy in question was issued in consideration of the " declarations " made by the insured in her application for the policy, that at that time she was in sound condition mentally and physically, that she never had had any bodily or mental infirmity or deformity, and that she had not been disabled or received medical or surgical attention within five years prior to her application for said policy of insurance, which declarations she " warranted " to be true; " that her said declarations * * * all of which were warranted by her to be true, were not true."

Some time prior to the trial an order was made requiring the defendant to serve a bill of particulars of the respects in which it claimed that the insured was not in the physical condition and free from ailments and deformities as stated in her application for the policy, and such a bill of items was served.

At the close of the case the defendant moved for a

dismissal of the action and the plaintiff moved for the direction of a verdict and, as already stated, the former motion was granted on the ground that applicant's statements heretofore quoted were false and avoided the policy. While the plaintiff's trial lawyer did not in any specific or satisfactory manner extricate himself from the position which was created by these two requests for the disposition of the case as a matter of law, he did after the motions were made engage in a colloquy with the court which indicated that he thought that the question whether the applicant's statements were untrue ought to be submitted to the jury, and when an order was made by the trial judge denying a motion for a new trial there was inserted in it a statement that the motion was denied " upon the ground that there was not a single question of fact that the court could leave to the jury, as stated by the court at the time of the trial herein." Out of all of these circumstances arise several questions which it is necessary to discuss.

It is quite questionable whether the defendant under its bill of items did not limit itself to urge as a defense the unusual intestinal or rectal formation which was only discovered when the insured was placed upon the operating table and which it is undisputed never interfered with the normal functions of her organs and could not have been known by her. The bill of items which was served is somewhat complicated and equivocal and it is difficult to determine whether it included and gave defendant the right also to urge by way of defense the condition of laceration which had existed for a long time. On the trial, however, this latter condition was developed and considered apparently without any particular surprise or injury to plaintiff and we have concluded to give the defendant the benefit of that interpretation of its bill of items which permitted this to be done.

We then come to a construction of defendant's answer which set up the alleged misstatements in the application

for a policy as a defense to the latter. The question here presented is the one whether the answer alleged a breach of warranty in respect of these statements or whether it simply alleged them as constituting misrepresentations by which the issue of the policy was procured. This question is one of importance especially in view of section 58 of the Insurance Law (Cons. Laws, ch. 28). Prior to 1906 a breach of warranty contained in an application for insurance constituted a defense to a claim upon the policy, although the warranty related to an immaterial matter. A misrepresentation contained in the application on the other hand only became a defense if it related to a material matter. (*Donley* v. *Glens Falls Ins. Co.,* 184 N. Y. 107.) Confronted by this condition of the law and desiring to modify it the legislature in 1906 adopted section 58 of the present Insurance Law which provides: " Every policy of insurance issued or delivered * * * by any life insurance corporation doing business within the State shall contain the entire contract between the parties * * *; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties." The result of this provision is that in order to produce a warranty in an application for insurance whereof a breach would necessarily and *ipso facto* avoid the policy, the statement claimed to constitute or have the effect of a warranty must be characterized by and include the element of fraud, and which ordinarily would be established by proof that the person making it knew that the statement was false, and wherefrom could be inferred an intent to deceive and cheat. A misstatement, even though stated in the form of a warranty, if made in good faith and without this element of fraud passed into the same class as an ordinary representation and became a defense to the policy only if it was material. On the other hand, the effect of a misrepresentation was left

29

unchanged by the statute. If material it constituted a defense although made innocently and without any feature of fraud; it was sufficient that it was material as an inducement for the issue of the policy, and was untrue.

Coming to the present answer the plaintiff insists that the defendant pleaded the alleged misstatements of the applicant concerning her health as warranties and that, therefore, under section 58 it was bound to establish, if it would succeed in this defense, that these warranties were infected by fraud, and which was not established, at least as matter of law.

I am inclined to think that the plaintiff's interpretation of defendant's answer is a perfectly reasonable one. The latter alleged that the applicant made certain " declarations " as to her physical condition which she " warranted " to be true; that her said declarations, all of which were " warranted " to be true, were not true. This seems to be a plain although somewhat roundabout way of stating that the applicant made certain warranties. The defendant of course is to be charged with knowledge of the provisions of section 58 and of the distinction which it made between warranties and representations, and when it used the word " warranted " as it did it ought to be charged with an accurate use of the word and cannot fairly be allowed to claim that it simply meant to allege representations. It does not seem to us to make any difference whether a pleader alleges that an applicant for insurance warranted certain things or that he made certain declarations and warranted those declarations to be accurate. One method of expression is a little more roundabout than the other but they both seem to come to the same end.

Adopting this view that defendant's answer is to be interpreted as setting up a breach of warranty and, therefore, to be tested by the requirements of section 58 that fraud must be proved in order to establish such

a warranty, we reach the question whether defendant did establish as matter of law that fraud surrounded or entered into statements which were made and thereby effected warranties under the statute. We think that this question may easily be answered in the negative in respect of two of the declarations made by the applicant. Disregarding the evidence of the witness Hicks, which, as will be pointed out hereafter, is incompetent, a jury would have been entirely justified in finding that Mrs. Klein had not been disabled and had not received medical or surgical attention within five years next preceding her application. There is really no evidence whatever that she was disabled down to the time of her application and the evidence in reference to the performance of an operation for her laceration is of such a character that it might very well be found that her statement in regard to medical or surgical treatment was entirely true. We also think that a jury could have found that her statement that she was in sound condition physically was true. We have called attention to the fact that outside of the evidence of the witness Hicks there was no evidence of the extent of her laceration and that, on the other hand, there was an abundance of evidence that whatever it was it had in no degree interfered with her general condition and health and her capacity for an active business career. And so far as concerns the intestinal or rectal abnormality discovered while she was being operated upon the evidence is undisputed that this condition had existed from birth, in all probability was never known of by her and did not in any degree interfere with the normal operation of her organs. Under these conditions and within the authorities which will hereafter be referred to in another connection, a jury clearly could say that she was in sound health. The other statement that she had never had any " bodily * * * deformity or infirmity " presents a somewhat closer question. The evidence of the abnormal condition of her intestinal

or rectal organs did not satisfy the requirement for fraud in a warranty because of the apparent lack of knowledge upon the part of the applicant of the existence of any such condition as was found. On the whole it is also doubtful whether the applicant had any such knowledge of her child-bearing laceration as would make her guilty of falsehood and of fraudulent intent when she stated that she had no physical deformity or infirmity. As will be more fully pointed out hereafter such words as "deformity" and "infirmity" in such a connection must have a reasonable interpretation and assuming that they cover such a condition as an accidental laceration from which applicant suffered, they should not be construed as so covering a defective condition of insignificant extent and of no practical effect upon the bodily condition of an insurance subject as to make a denial of their existence conclusive evidence of fraud. For these reasons, therefore, we think that a jury might say that the applicant was not guilty of any intentional falsification or fraudulent intent in stating as against this laceration that she had no physical deformity or infirmity, and it was error to hold otherwise as matter of law and to dismiss the complaint as was done.

Even if we should take the view urged by defendant that its answer alleged misrepresentations instead of warranties in procuring the policy we should still reach the conclusion that the question whether this defense was established was one for the jury. This is so clearly so in respect of the statements in the application that applicant was in "sound condition" physically and had not been "disabled" that we shall spend no time in discussion of the proposition. (*Barnes* v. *Fidelity Mut. Life Assn.*, 191 Penn. St. 618; *Packard* v. *Metropolitan Life Ins. Co.*, 72 N. H. 1; *Morrison* v. *Wisconsin, etc., Ins. Co.*, 59 Wis. 162; *Brown* v. *Metropolitan Life Ins. Co.*, 65 Mich. 306; *French* v. *Fidelity & Casualty Co.*, 135 Wis. 259; *Maryland Casualty Co.* v. *Gehrmann*, 96 Md. 634.)

So far as concerns the laceration, that was not a "deformity" but, if anything, an "infirmity." One who cuts his finger does not under a reasonable interpretation of language produce a deformity which implies some sort of a malformation. On the other hand, the difficulty with applicant's intestinal or rectal organs was apparently a deformity. But assuming that the applicant under the broadest possible meaning of those words in one case had an infirmity and in the other a deformity the question still remains whether these defects were of sufficient extent and importance so that within a reasonable meaning of the words a statement by applicant that she was free from deformities and infirmities constituted a material misrepresentation which avoided the policy and, in line with what has already been said, we think that this was a question for the jury. No person is entirely free from deformities and infirmities. In the broadest interpretation of this language a crooked nose would be a deformity and the slightest impairment of full bodily vigor an infirmity. But of course the language of a representation contained in an application for insurance is not to be construed in any such unreasonable way as this. It must be construed as meaning a deformity or an infirmity of a substantial character which apparently in some material degree impairs the physical condition and health of the applicant and increases the chance of that death or sickness against which the insurance company is asked to issue insurance, and which if known would have been liable to deter the insurance company from issuing the policy. (Cases cited *supra; Cushman* v. *U. S. Life Ins. Co.,* 70 N. Y. 72, 77; *Bernays* v. *U. S. Mut. Accident Assn.,* 45 Fed. Rep. 455; *Man. Accident Indemnity Co.* v. *Dorgan,* 58 Fed. Rep. 945; *Conn. Mut. Life Ins. Co.* v. *Union Trust Co.,* 112 U. S. 250; *Penn. Ins. Co.* v. *Mechanics Savs. Bank,* 37 U. S. App. 692, 725; *Knights of Pythias* v. *Cogbill,* 99 Tenn. 28, 36; *Brown* v. *Met. Life Ins. Co.,* 65 Mich. 306,

314; *Hann* v. *Nat. Union,* 97 id. 513, 519.)   Applying
this interpretation to the language used we think that
the jury could have said that the existence of the defects
referred to did not render the applicant's statement a
material misrepresentation.

In the preceding discussion we have, of course, assumed
that the plaintiff did not waive its right to have the
questions outlined submitted to the jury, and that, there-
fore, it is entitled to complain of the disposition made
in dismissing the action as matter of law.   Undoubtedly
its trial counsel came perilously near waiving this right.
In answer to defendant's motion to dismiss the complaint
he made a motion for the direction of a verdict and
under perfectly familiar principles of practice these
motions standing unaffected by anything else would have
left it to the trial justice to dispose of the case and pass
upon any questions of fact necessarily involved.   How-
ever, while not in terms retreating from this situation
which he had helped to create plaintiff's counsel did
subsequently and before the case was formally disposed
of argue that he was entitled to have the jury pass upon
the questions which had been tried.   The question of
waiver of the right to go to the jury is largely one of
intent and we think that as the result of the discussion
between the court and counsel it was finally understood
by both that the plaintiff did not intend to waive but
rather to insist upon its right to go to the jury.   (*Koehler*
v. *Adler,* 78 N. Y. 287.)

There remains the final question for discussion pre-
sented by the ruling on the trial allowing the interne in
the hospital to state what Mrs. Klein told him about
her laceration and the effects thereof.   If this evidence
was incompetent this ruling of itself would sustain the
order of the Appellate Division in granting a new trial.
We think the evidence was incompetent.   In fact we
can think of no theory which even appears to justify
its reception.   The statements were made by Mrs. Klein

long after the policy had been issued and the rights of the plaintiff had vested. There is no rule which permits an applicant for an insurance policy thus to destroy the rights of the insured to whom a policy has been issued. The evil and unjust effects of a rule permitting such evidence to be received are sufficiently illustrated by the present case which outlines a common custom on the part of employers. It is common for such employers to protect themselves against the loss and damage which may result from the death of an officer or an important employee by insuring his life. While the application may be made by the person whose life is insured we can assume that the application is made at the instigation and on behalf of the employer and that the expense of the insurance is paid by him. It certainly would be an anomaly in the law if the results of this protection to the employer could be destroyed by the subsequent statements of the insured, of the character proved in this case. Of course the insured at the time she made her statements to this interne was not in any manner so acting in behalf of the corporation or in its interest or business that she could bind it by her statements. The rule is perfectly well settled that an employee or agent cannot bind its principal by statements unless made in the course of and within the scope of the business being transacted for the principal. Such was not the case here in even the most remote degree.

The very case of *Swift* v. *Mass. Mutual Life Ins. Co.* (63 N. Y. 186, 193), cited by the appellant, and the case of *Rawls* v. *American Mutual Life Ins. Co.* (27 N. Y. 282), cited with approval in the *Swift* case, make apparent the error which was committed in the admission of this evidence. In the *Swift* case it was claimed by the defendant that the applicant had been guilty of misrepresentation in respect of his health in procuring a policy to be issued in favor of the plaintiff. For the purpose of showing that misrepresentations had been made evidence was given

of the superficial appearance and acts of the insured a short time *before* the policy was issued tending to show ill health and the controverted testimony was of explanatory statements made by the insured in answer to inquiries then directed to these appearances of ill health. It was held that a " prior fact or act (of the insured) not too remote, is proof against the policy holder, of knowledge concealed by the subject of the insurance.  Hence it is, too, that any statement which is part of the *res gestœ* of such prior fact or act tending to characterize and explain it, is also proof thereof, though unsworn to," and that, therefore, the fact of the physical appearance of the insured before the policy was issued as tending to show misrepresentation was provable, and the statements made by the insured in respect of the cause of character or such appearance were part of the *res gestœ* and could be proved.  As stated, however, this case cited and approved the rule laid down in the *Rawls* case that statements made by an insured *after* a policy had been issued in favor of another were not admissible; that after the issue to another of the policy in question the latter's rights could not be divested or destroyed by any statement or admission of the one upon whose life the policy had been issued.

For all these reasons we think that the order of the Appellate Division should be affirmed and judgment absolute granted against appellant on its stipulation, with costs in all courts.

Hogan, Cardozo, Pound, McLaughlin, Crane and Andrews, JJ., concur.

Order affirmed, etc.