DORÉ, Judge.
This appeal is from a decision of the lower court rejecting plaintiff’s claim for hospital and medical expenses alleged to be due under the terms of a hospital and surgical expense policy written by the Reserve Life Insurance Company of Dallas, Texas. Plaintiff seeks to recover $84, plus a penalty of $168 (or double the sum due under the policy) and reasonable attorney fees of $150 alleged to be due because defendant, without just and reasonable ground, refused to pay plaintiff’s claim within thirty days from submission of proof of claim, as is required by LSA-R.S. 22:-657.
In this court defendant-appellee filed a motion to dismiss the appeal for want of jurisdiction ratione materiae in that the main demand is less than $100. We do not find the motion well founded. The prayer of the petition is for judgment in the total sum of $402, an amount within our jurisdiction. The appeal is sustained.
Plaintiff alleged that the policy was issued to her on or about January 18, 1951 and that on or about May 1, 1951 she was hospitalized due to illness and incurred certain expenses for which defendant was liable under its policy up to the sum of $84; that the hospitalization occurred after the policy had been in force for more than 15 days; and that more than 30 days have *252 elapsed since proof of claim was submitted to defendant, yet defendant has failed to pay the sum due. The answer of defendant was in substance a general denial.
The insuring clause of the policy states that the company insures the applicant and agrees to pay “subject to all provisions and limitations herein contained, the benefits provided herein for hospital confinement and other specified expense * * * (b) resulting from sickness which originates while this policy is in effect and more than fifteen days after the date hereof * * Under a section headed “Hospital Expense Benefits” the policy lists several specific expense items for which the company will pay, and it was five of these, making up a total of $84 for which plaintiff sued. Another section of the policy is headed “Standard Provisions”, and contains inter alia the following:
1. “This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. * * *
2. “No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change the policy or to waive anyof its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval endorsed hereon.”
There were no endorsements or papers attached to the. policy, nor was the application attached.
The only testimony taken at the trial was that of plaintiff; but by stipulations counsel entered what would have been the testimony of Dr. R. E. Dupre and Dr. R. B. Thompson if they had been called in as witnesses. In addition tó 'this, counsel by agreement placed in evidence'th'e Claimant’s Hospitalization Statement and' the Physician’s Hospitalization ' Statement, both of which were prepared in connection with or as a result of the hospital confinement that gave rise to this claim. The stipulation giving Dr. Dupre’s testimony was brief and can be summarized by saying that he operated on Mrs. Vidrine in 1947 or early 1948 and removed ovaries; that the uterus (womb) was then inflamed, but in his opinion its removal was not necessary at that time; and that he did not treat her during approximately one and one-half years prior to her operation in May, 1951.
The pertinent part of the stipulation giving Dr. Thompson’s testimony was as follows :
“Upon examination of Mrs. Vidrine his impression was that there was probably a mass between the rectum and the posterior uterine wall and numerous cysts of the cervix uteri. He recommended X-ray irradiation of the uterus in an attempt to postpone or eliminate the necessity of surgical removal of the uterus.”
The stipulation said further that Mrs. Vid-rine visited Dr. Thompson in reference toiler condition twenty-eight times between her initial visit and the operation in May, 1951.
Mrs. Vidrine testified on direct examination:
“Q. Now, Mrs. Vidrine, at the time that you applied for and was issued this policy by the Reserve Life Insurance Company, were you given any physical examination by the Reserve Life Insurance Company? A. No sir.”
On cross-examination she testified:
“Q. Now, Mrs. Vidrine, do you recollect just*what the operation entailed? (meaning the operation in 1948) A. What it was ?
“Q. Yes madam. As I understood it, at that date, he removed your ovaries and tubes? A. Yes sir.
"Q. Do you know why he didn’t remove your uterus at that time? A. Yes, because the job was too big, it was worse than he expected, so he left it and thought that it would gradually dry lip like a woman in the change of age.
* * * * * * •
“Q. Mrs. Vidrine,.Didn’t Dr. Dupre tell you after the operation that the reason he did not remove your uterus was because of adhesions and offered *253 you to call upon him anytime to perform that operation and that he would call a specialist in? A. Yes, he didn’t tell me of adhesions, but he told me it was stuck to my rectum, and it would take too long that date, but I might never suffer anymore, it would just dry up, and if it didn’t do, that I would have to have an operation to be done; he would do it for nothing, that he had made a big mistake, he did not think I was that bad off.”
In the light of the testimony quoted above there is no room for doubt but that the uterus of plaintiff was in an unhealthy condition prior to the time her insurance policy was issued in January, 1951, that she had knowledge of this condition and was treated for it, and that it was this unhealthy condition of the uterus that caused her hospitalization and operation in May, 1951. So it must be concuded that there is no liability resting on defendant unless it arises in some way other than under the insuring clause quoted hereinabove.
But plaintiff has sought in argument and brief to fasten liability on defendant in spite of the fact that plaintiff’s hospitalization resulted from an illness or unhealthy condition that existed prior to issuance of the policy. Counsel for plaintiff state in brief that the issues in the case are these: 1. Was the hospitalization of plaintiff a “sickness” originating while the policy was in effect? and 2. Is defendant bound by the construction of “sickness” as represented to plaintiff at the time she purchased ■ the policy? And plaintiff answers both of these questions in the affirmative.
On the first issue plaintiff’s position seems to be that a diseased condition in an acute stage that requires hospitalization and operation constitutes a separate and distinct sickness from a diseased condition in a mild stage which does not yet require hospitalization or surgery. Counsel cite two cases which admittedly might provide some slight comfort to one in plaintiff’s position, these being Dance v. Southern Surety Company of New York, 1931, 2d Cir., 16 La.App. 373, 134 So. 725, 726, and National Casualty Company v. Hudson, 32 Ala.App. 69, 21 So.2d 568, an Alabama case decided in 1945. In the Dance case the plaintiff, on the day after her policy was issued, learned through a routine physical check-up that she had “sub-acute appendicitis”; but she suffered no pain or discomfort and underwent no medical treatment. Some forty days later she suffered an acute inflammation of the appendix and underwent an operation. Her claim was rejected by the insurer, but she was allowed to 'recover by the trial court and by the Court of Appeal. Our understanding of that decision is that the court concluded, from the medical testimony presented, that while Miss Dance had “sub-acute appendicitis” within' fifteen days after the policy was issued she “did not experience any pain or illness * * * from such condition” and that any inflammation of her appendix that existed within the fifteen day period had cleared up, and the “acute inflammation of the appendix” that occurred later was probably entirely independent of the condition that existed earlier. The situation found there is not analogous to the present case because in the present case it is abundantly clear that plaintiff had a diseased uterus in 1948; X-ray treatment was recommended for her in 1949 in an effort .to postpone the removal of the uterus, and her condition obviously never cleared up.
In the Hudson case the parents of a ten-year old boy noticed about the first of May, 1943, for the first time, that the boy was having trouble with his knees, evidenced by complaint of pain and weakness in the knee joints. ' A physician was consulted who found that the boy had a very small underdeveloped knee cap on both sides, diagnos- ' ing the trouble as “bilateral, congenital and dislocated patellae.” [32 Ala.App. 69, 21 So.2d 569.] The boy, however, up to a short time before his operation, had played football, base ball, swam, rode a bicycle, and in every respect engaged in a life of a normal boy without pain or discomfort. The operation took place on June 7, 1943. In allowing the parent to recover under a policy similar to the present one the court quoted a definition of “sickness”, found in other Alabama cases, as being “any morbid con *254 dition of the body * * * which for the time being hinders and prevents the organs from normally discharging their several functions.” The court then said that while the boy’s malady was congenital in nature (and had of course existed before the policy was issued) yet “the lower court was privileged to find also from the evidence that this congenital malnormality did not exert itself to the extent of affecting the use of the child’s limbs in discharging their normal functions until after the effective date of the policy.” There again is a case distinguished from the present one, because in the present instance Mrs. Vidrine knew in 1948 that she had a diseased uterus and in 1949 her physician was treating her for her ailment, as he apparently also was in 1950. While she may have continued to discharge her normal functions during that period she did so with constant medical aid. We do not feel that either of those cases is controlling here.
On the other hand, the statement quoted favorably by the Orleans Court of Appeal in Taormina v. National Hospital Service Ass’n, La.App., 43 So.2d 31, 33, fits the present case, to-wit:
“We believe that the exception or limitation placed in the policy, to the effect that the Association will not he liable for any disability originating prior to the effective date of the policy, means and was intended to mean that, if the insured had need of hospitalization caused by some disease, from which she was suffering prior to the time the policy was issued to her, the Association would not be responsible for the expenses incurred.”
Plaintiff’s next contention is that defendant is bound by the construction of the term “sickness” placed on the word by its agent who sold the policy to plaintiff, and this construction is shown by the testimony given by plaintiff as follows:
“Q. At that time, were you or were you not told by her that this policy would cover any hospitalization for the first six (6) months it was in effect, but would not cover any operations until after it had been in effect six (6) months ? A. That is right.”
That contention is without merit. The standard provisions found in the policy and quoted hereinabove, to the .effect that the policy contains the entire contract of insurance and that no agent has authority to change the policy, are plain and unambiguous. Furthermore, they are in the policy because they are required by our state law. LSA-R.S. 22:213. Most of the policy provisions required by statute are for the benefit of the assured. The court cannot read out of the policy these present provisions just because in this instance they work to the insured’s detriment.
We do not feel that in making the contention just referred to plaintiff was attempting to charge the defendant’s agent with fraud or misrepresentation. The petition contains no allegation of fraud, and, although it might be urged that the pleadings were enlarged by the evidence quoted above, which was entered into the record without objection from defendant, nevertheless this is not enough to support a claim of misrepresentation. It might be that some agents practice misrepresentation in selling policies; but there is nothing in the record to support such a charge here.
For the reasons given above, the judgment dismissing plaintiff’s suit is affirmed.