BARBARA BARRETT, Respondent, v STATE MUTUAL LIFE ASSURANCE COMPANY, Appellant.

First Department, July 14, 1977

*William E. Kelly* of counsel *(Charles M. Pratt* and *C. Robert Prianti* with him on the briefs; *Casey, Lane & Mittendorf,* attorneys), for appellant.

*Samuel W. Sherman* of counsel *(Leon Wasserman,* attorney), for respondent.

*Per Curiam.* We here review a plaintiff's judgment following the second trial of this lawsuit after our remand for retrial (49 AD2d 856). The subject of the suit and its basic issues are well stated in that memorandum opinion (pp 856-857): "Plaintiff, Barbara Barrett, brought this action as the beneficiary of a life insurance policy on the life of her husband, Joseph F. Barrett (hereinafter Barrett), to recover the sum of $20,000 from the defendant State Mutual Life Assurance Company. On October 7, 1969, Barrett executed Part I of the application for life insurance. He there agreed that defendant would not be liable on its policy unless the policy was delivered during his lifetime and sound health and then only if he has not consulted or been treated by any physician since the completion of Part II. On October 17, 1969, Barrett completed Part II. He there denied, *inter alia,* (1) any history of chest pains or heart disease; (2) that he contemplated an operation; and (3) that he now smokes or has smoked within the preceding 12 months. After an examination by defendant's doctor, defendant was advised that Barrett was healthy. Barrett died in May, 1970 of cancer. Defendant refused to pay the proceeds of the policy alleging material misrepresentations in Part II and that the insured's health and insurability were not the same as described in Parts I, II and the smoking statement of the application [pp 856-857]."

It is urged upon us that we may not consider defendant's arguments as to sufficiency of the evidence because we have heretofore impliedly held that plaintiff's case is prima facie

sufficient in that our prior reversal of a judgment in plaintiff's favor remanded the cause for a new trial. Indeed, our memorandum opinion contains the now troublesome statement that "whether Barrett's answers on the application for the policy were truthful or untruthful and, if untruthful, whether they constituted material misrepresentations as to any pre-existing hernia or heart condition, were essentially factual issues for the jury to decide (prior appeal, p 857)." This statement was, however, followed on the same page by the notation "that the trial court improperly excluded evidence of defendant's underwriting practices * * * [and] erroneously charged, in effect, that an innocent misrepresentation as to the questions asked is not sufficient". These errors effectively rendered the first trial a charade and a nullity and, in reversing, the question of prima facie case was never truly passed on. It is not the law of this case that plaintiff heretofore made a prima facie showing. In this regard, we distinguish *Politi v Irvmar Realty Corp.* (13 AD2d 469) wherein a new trial had been ordered "solely on the ground that the verdict was against the weight of the credible evidence." Therefore, we may consider defendant's arguments as to sufficiency of the evidence. However, even if we had impliedly held that a prima facie case had been established on the first trial, there are "extraordinary circumstances" *(Politi, supra,* p 469) which would here justify us in not considering that to be the law of the case. It must be recalled that our holding reversing the first trial's verdict effectively said that that case had been considered by the jury on an erroneously circumscribed record in the light of an incorrect instruction as to applicable law. Though this second trial was not exactly free of error, the record establishes to our satisfaction that defendant was entitled to a directed verdict on the entire case.

Plaintiff's case was presented by her own formal testimony establishing the insurance contract, payment of the premium, death of plaintiff's decedent, demand for and refusal of payment. The representations made by the decedent and set forth in the documents were as excerpted above from the opinion reversing the first verdict. On further examination by the defense, she admitted that her husband had, within five years preceding application for the policy, experienced symptoms usually associated with a heart condition and had consulted Dr. Davidoff concerning "chest throbs" and taken medication therefor prescribed by the doctor. Further, that during this

time, he had been placed on a restricted diet by the doctor. Moving to the defendant's case, Dr. Davidoff was called as defendant's witness and testified that shortly before the five-year period, the decedent had consulted him for chest pains, diagnosed as angina pectoris, for which he had prescribed medication, inclusive of, in December, 1964, nitroglycerin. The condition was relieved by January, 1965, but he was consulted again in January, 1966, and again prescribed the nitro. Decedent underwent a hernia operation toward the end of 1969, at which time he gave the anesthesiologist a history: "53 year old male for right inguinal herniorrhaphy. Agrees to spinal anesthetic. History of A.S.H.D. [Arteriosclerotic Heart Disease] with angina pectoris. On Peritrate. EKG within normal limits." It is noted that the answers to defendant's questions included negative replies to questions as to whether, "within the past five years" he had had "pain or pressure in the chest" or had "ever been on a restricted diet" or "ever consulted or sought advice * * * from a physician * * * for any reason not already mentioned". It is unnecessary to go further.

Quite obviously, the evidence demonstrates without contradiction that the decedent's answers were at variance with the facts. Further, these facts were patently material; indeed, it was part of defendant's evidence—correcting one of the first trial's errors—that, had defendant known the truth, the policy in evidence, whatever may have been done about a possible higher premium rate, would not have issued in the form found here.

"It is the rule that even an innocent misrepresentation as to specific diseases or ailments, if material, is sufficient to allow the insurer to avoid the contract of insurance or to defeat recovery thereunder (Eastern Dist. Piece Dye Works v Travelers Ins. Co., 234 NY 441, 449-450; 30 NY Jur, Insurance §§ 947, 949). Subdivision 2 of section 149 of the Insurance Law provides that '[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.' Further, subdivision 4 of section 149 of the Insurance Law states that a misrepresentation that an applicant has not had previous medical treatment shall be deemed, for the purpose of determining its materiality, a

misrepresentation that the applicant has not had the ailment for which treatment was given. Ordinarily, the question of materiality of misrepresentation is a question of fact for the jury. However, where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine. The test is whether failure to furnish a true answer defeats or seriously interferes with the exercise of the insurance company's right to accept or reject the application. The major question is whether the company has been induced to accept an application which it might otherwise have refused (see *Geer v Union Mut. Life Ins. Co.,* 273 NY 261). Applying the foregoing test to the instant facts, it is clear that the misrepresentation is material as a matter of law and that the complaint should have been dismissed."

*(Process Plants Corp. v Beneficial Nat. Life Ins. Co.,* 53 AD2d 214, 216-217, affd on opn at App Div 42 NY2d 928.) The case is directly in point, and its teaching dictates that, on the entire case, the defendant's motion for direction of verdict in its favor should have been granted.

Were we not reversing and dismissing the complaint we would remand for two trial errors which, *inter alia,* prevented defendant from enjoying a fair trial. Decedent's physician, Dr. Davidoff, obviously an unwilling witness, was questioned by defense counsel as to the use of nitroglycerin for his patient. The court cut off an answer by observing that "the implication or inference therefrom is so obvious." That observation could mean only one thing, that the drug was used for heart problems. If that obvious, a verdict for defendant should have been directed; if not, then the answer should have been permitted. Again, Dr. Davidoff, who minimized the decedent's medical problems, testified that, about the time that his patient was in the hospital, he had prepared a record of his medical involvements, inclusive of "treatment for angina pectoris." Though the contradiction is obvious, the record was rejected as evidence.

Accordingly, the judgment for plaintiff, entered July 7, 1976, in Supreme Court, New York County, after trial to a jury (SMITH, J.), should be reversed, on the law, vacated and the complaint dismissed, without costs. The appeal from the order denying defendant's motion to set aside the verdict should be dismissed, without costs, as academic.

BIRNS, J. P., EVANS, CAPOZZOLI and MARKEWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on July 7, 1976, unanimously reversed, on the law, vacated and the complaint dismissed without costs and without disbursements.

Appeal from order, Supreme Court, New York County, entered on July 30, 1976, unanimously dismissed as academic, without costs and without disbursements.