■ MICHAEL A. KULIKOWSKI, Respondent, v ROSLYN SAVINGS BANK, Appellant.—In an action to recover the proceeds of a mortgage insurance policy, the defendant appeals from (1) a judgment of the Supreme Court, Nassau County (Velsor, J.), dated November 20, 1984, which is in favor of the plaintiff and against it in the total sum of $61,093.25, upon a jury verdict,

and (2) an order of the same court, dated September 28, 1984, which denied its motion, *inter alia,* to set aside the verdict.

Appeal from the order dated September 28, 1984, dismissed *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment *(see,* CPLR 5501 [a] [1]).

Judgment reversed, on the law, and complaint dismissed.

The defendant is awarded one bill of costs.

The plaintiff's wife died on September 17, 1980. Thereafter, the plaintiff filed a claim on the group mortgage protection life insurance policy issued to him and his wife by the defendant in July of 1979. By letter dated April 13, 1981, the plaintiff's application for payment was denied on the ground that "certain material information * * * was not supplied to the bank at the time the insurance was applied for, although specific questions were asked in the application". Specifically, although the plaintiff's wife had consulted with a Dr. Magidson, a hematologist, and had been diagnosed as having a mild case of Von Willebrand's disease, a blood disorder, in July 1977, and a Dr. Chernaik recorded a tentative diagnosis of Ehlers-Danlos Syndrome, a connective tissue disorder, in January 1979, this information was not contained in her June 1979 insurance application. Rather, in response to the question, "[give] names and addresses of physicians [consulted in the last three years and] dates, conditions, special tests, duration, and treatment", the only notation that appeared was "2/79—Dr. Chernaik—Patchogue, NY, Routine Exam-found in good health". After his application for payment was denied, the plaintiff commenced the instant action. A jury trial of the action resulted in a verdict for the plaintiff. We now reverse on the ground that the insurance application questionnaire contained misrepresentations that were material as a matter of law.

It is well established that in order for an insurer to establish its right to rescind an insurance policy, it must establish that there were misrepresentations in the application, and that the misrepresentations were material to the risk it was being asked to insure *(see, Vander Veer v Continental Cas. Co.,* 34 NY2d 50, 52-53). At the trial, the plaintiff conceded that there were misrepresentations inasmuch as the application failed to contain certain medical information relating to the medical history of his wife, to wit, the diagnosis of Von Willebrand's disease and the tentative diagnosis of Ehlers-

Danlos Syndrome. While the record indicates that the plaintiff and his wife were apparently unaware of the specific diagnoses of Von Willebrand's disease and Ehlers-Danlos Syndrome, even innocent misrepresentations, if material, are sufficient to allow an insurer to defeat recovery under the insurance contract *(see, Eastern Dist. Piece Dye Works v Travelers Ins. Co.,* 234 NY 441, 449-450; *Barrett v State Mut. Life Assur. Co.,* 58 AD2d 320, *affd* 44 NY2d 872; *Fernandez v Windsor Life Ins. Co.,* 83 Misc 2d 301, 305-306, *affd* 52 AD2d 589). Further, although the plaintiff's wife was certainly aware of the fact that she had consulted Dr. Magidson, she failed to include that information in her insurance application *(see,* Insurance Law § 3015 [d]).

"Although materiality is ordinarily a question of fact, where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine" *(Smirlock Realty Corp. v Title Guar. Co.,* 70 AD2d 455, 462, *mod on other grounds* 52 NY2d 179; *see also, Leamy v Berkshire Life Ins. Co.,* 39 NY2d 271; *Process Plants Corp. v Beneficial Natl. Life Ins. Co.,* 53 AD2d 214, 216, *affd* 42 NY2d 928). In the instant case, the defendant established that the misrepresentations were material as a matter of law within the meaning of Insurance Law § 3015 (b) *(see, Tolar v Metropolitan Life Ins. Co.,* 297 NY 441; *Process Plants Corp. v Beneficial Natl. Life Ins. Co., supra; Home Life Ins. Co. v Kupfer,* 281 App Div 685). John Petraglia, the underwriting director of the Savings Bank Life Insurance Fund, who had 15 years of underwriting experience, testified that Von Willebrand's disease and Ehlers-Danlos Syndrome were detrimental to longevity. He testified that he had never personally approved an applicant with either Von Willebrand's disease or Ehlers-Danlos Syndrome, and that to his knowledge no underwriter at the fund had ever approved an applicant for Savings Bank Life Insurance who had either disease. During Petraglia's testimony, the underwriting manual used by the fund was admitted into evidence. The manual indicated that Von Willebrand's disease is a "hemorrhagic disorder [that] can occur in females as well as males. It is a *serious impairment and may be especially so in women* due to menorrhagia" (emphasis added). The manual further stated, "[u]sually decline, but carefully selected cases may be considered at 150 up", which, Petraglia explained, meant that under certain circumstances such a risk might be found acceptable to a reinsurer at a certain high premium, but that it was a risk which the fund would not want to deal with. Petraglia further

testified, without contradiction, that the fund did not have a reinsurer in 1979, and that a premium rating of 150 was unavailable for group mortgage insurance, which was available only at the standard premium. He also testified that the underwriting manual gave no discretion to an underwriter to approve an applicant with Von Willebrand's disease who was applying for group mortgage insurance. Finally, Petraglia testified that he would not have approved the insurance application no matter how mild the plaintiff's decedent's diseases were, or how tentative the diagnoses were. Petraglia's testimony, together with the underwriting manual, established that had the defendant known of the diagnosis of Von Willebrand's disease and the tentative diagnosis of Ehlers-Danlos Syndrome, it would not have issued the policy in question. Lazer, J. P., Brown, Rubin and Eiber, JJ., concur.