MICHAEL PALMA and NUZZIA PALMA, Respondents, *v.* NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Appellant, Impleaded with GENESEE RIVER NATIONAL BANK AND TRUST COMPANY OF MT. MORRIS, NEW YORK, Defendant.

Fourth Department, March 21, 1934.

*J. Sawyer Fitch*, for the appellant.

*William J. Flynn* [*Scott W. Crane* with him on the brief], for the respondents.

CROSBY, J.   Defendant insurance company issued a fire insurance policy to plaintiff Michael Palma on property owned by him and his wife, Nuzzia Palma, as tenants by the entirety.   After a destruction by fire of the house and furniture insured, this action was brought to reform the policy by having the name of the wife added as one of the named insured persons, and to recover on the policy as so reformed.   The defendant bank was made a party because it had a mortgage on the property insured, and, as the policy contained the usual mortgagee clause, the insurance company has paid the bank the amount of the mortgage, and the bank is no longer interested.

As against the plaintiffs, however, appellant raised the following defenses, in substance:

(1) That gasoline was kept on the premises contrary to the policy provisions;

(2) That the interest of the insured (Michael Palma) was " other than unconditional and sole ownership; "

(3) That the insured (Michael Palma) was guilty of false swearing in the proof of loss;

(4) That there was an increase of hazard " within the control or knowledge of the assured; " and

(5) That plaintiff Michael Palma intentionally caused the fire.

The record discloses that the fire in question occurred under suspicious circumstances.   Plaintiffs had a large family of children, all of whom but one small child had gone to some entertainment on

the night of the fire. Mr. Palma left the house at about seven P. M. and went to a poolroom where he remained until the fire occurred. Mrs. Palma left the house at about eight-forty-five P. M. and went to call on a neighbor, taking the only remaining child with her. The fire started at about nine-forty-five P. M. when no one was in the house, and was preceded by an explosion that bulged the walls of the house outward in some places. Immediately after the explosion the whole house was aflame. The fire was not subdued until the house was an almost total loss, but, within the ruins, rags saturated with gasoline were found around the baseboards in some of the rooms, bed clothes and mattresses had a strong odor of gasoline, and from all the evidence it is at least doubtful that this was an innocent fire. I pass over many details, and shall not consider here the evidence bearing upon the defense of fraud and false swearing in the proof of loss.

For I am persuaded that the defense, (2) that the policy was void because the insured named therein was not the sole owner of the property, was a valid defense and ought to have resulted in a dismissal of the complaint.

The policy provided as follows: " This entire policy shall be void, unless otherwise provided by agreement in writing added hereto,

" (a) if the interest of the insured be other than unconditional and sole ownership."

Concededly Mr. Palma was not the sole owner, and no rider was ever attached showing Mrs. Palma's interest in the property, and it is undisputed that the policy was delivered to Mr. Palma and remained in his possession and was destroyed in the fire. The only evidence given to support the claim of right to have the policy reformed is the testimony of Mr. Flynn, attorney of record for the plaintiffs. Although undisputed, his testimony does not go far enough to support the judgment. He says that, while examining some of the defendant bank's securities, in his capacity as chairman of a committee of the bank, he discovered that the bank lacked a certificate showing its interest in the insured property of the plaintiffs; that he thereupon called, by telephone, the appellant's agents, who issued the policy, and " I told them to issue a subsequent mortgage clause to the Genesee River National Bank and Trust Company on the Palma policy and to add to the name of the policy the wife, Nunzia (sic) Palma." He further said he was not sure with whom he talked; it might have been one of the insurance agents, or a young lady who worked in the office. In the opinion of the learned trial court it is three times stated that the promise was given by the person with whom Mr. Flynn talked, over the telephone, to make the change in the policy so as to show Mrs.

Palma as one of the persons insured. There is not a word in Mr. Flynn's testimony from which it could even be inferred that such a promise was made. He repeatedly says that the entire conversation consisted in his making the request that the change be made. It does not even appear that he had or claimed to have authority from the Palmas to make the request. It only appears that he had at some time acted as attorney for the Palmas and knew the state of their title. The policy was not in the possession, under the control or within the reach of the insurance company or its agents. The trial court did not make and, on the evidence, could not have made, a finding of a promise by the insurance agents to change the policy. The only findings (Nos. 14 and 15) are that the insurance company and its agents " were duly advised that there was an error " in the policy, and that they " failed and neglected to change and modify said policy   *   *   *   as requested by the plaintiffs." It is not even alleged in the reply of plaintiffs that defendant insurance company promised or agreed to make the requested change, or did anything to work an estoppel against it, further than that it " failed and neglected to change and modify said policy." The situation here is vastly different from that in *Barone* v. *Ætna Life Ins. Co.* (260 N. Y. 410), where the insurance agent's clerk said that " she would take care of that endorsement."

Respondents rely on the rule that an insurance company, having knowledge of grounds of forfeiture, owes the duty to declare it, otherwise it is waived. That, as I understand it, is only true where the company through its promise has led the insured to believe that he was protected, as in the *Barone Case (supra)*; or has accepted a premium after knowledge of the forfeiture; or has required something of the insured which it could only require under the policy and by reason of its terms, as in the case of *Titus* v. *Glens Falls Ins. Co.* (81 N. Y. 410), where the insured was required to appear for examination; or where the insurance company " recognizes the continued validity of the policy, or does acts based thereon, or requires the insured to do some act or incur some trouble or expense." (*Armstrong* v. *Agricultural Insurance Co.*, 130 N. Y. 560, 564.) As was said in the *Titus Case (supra,* at p. 419): "A waiver cannot be inferred from its [insurance company's] mere silence." In the *Armstrong Case (supra)* it was held that where a mortgagee had forfeited his protection under a fire insurance policy, by commencing foreclosure without obtaining the insurance company's consent, and where the mortgagee, before the fire loss occurred, disclosed to the company his inadvertent mistake and asked for consent to continue the foreclosure suit, the failure of the company either to consent or claim the forfeiture, did not

constitute a waiver of its defense or estop it in any way. The case went even further. After the loss the mortgagee filed proofs of loss, which the insurance company refused to accept, on the stated ground that, by the terms of the policy, such proofs should be made by the owner of the fee, the mortgagor. After a refusal, by the latter, to verify proofs of loss, the mortgagee went to the trouble of making an affidavit of his inability to secure proofs of loss from the owner and again tendered proofs of loss verified by himself. And still the court held that the company had not waived the forfeiture about which it knew all the time, and about which it had kept silent all through the controversy about the proofs of loss. And the reason assigned for the decision was that, as a foundation for his action, the insured was compelled to make proof of loss, the company requiring nothing from him in that respect, and that the company had a right to maintain silence as to its defense based on forfeiture, and to disclose it only when called upon by suit.

In *Manchester* v. *Guardian Assurance Co.* (151 N. Y. 88) an agent of the insurance company promised to make an indorsement on a policy showing a change in ownership, and failed to do so, although the policy was in the hands of a third person and accessible to the agent. The company was held to be estopped from claiming the forfeiture. But in our case there was no promise by the agent to make the change; he did not have access to the policy; the insured knew the state of his title; the agent did not. It would be going far beyond reason to hold that the appellant was estopped from claiming forfeiture by information and request conveyed to it by a person not shown to have any authority to act for the insured, and not even claiming authority to speak for the insured when the request was made.

In order to support this judgment (quoting from *Armstrong* v. *Agricultural Ins. Co.*, 130 N. Y. at p. 570), " ' There must be * * * evidence from which the jury would be justified in finding that, with full knowledge of all the facts, there was an intention to abandon, or not to insist upon, the particular defense afterwards relied upon, or that it was purposely concealed under circumstances calculated to, and which actually did, mislead the other party to his injury.' "

There is no such evidence here.

The judgment in favor of the plaintiffs should be reversed on the law, with costs, and the complaint dismissed, with costs.

All concur, SEARS, P. J., in result.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.