BORO PRECISION PRODUCTS CORPORATION, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.

No. 61–C–223.

United States District Court
E. D. New York.

Nov. 14, 1963.

Morris Nisonoff, Jackson Heights, N. Y., and Harry J. Coman, Mineola, N. Y., for plaintiff, Goldstein & Goldstein, New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, for defendant, William P. Hindman, Jr., New York City, of counsel.

BARTELS, District Judge.

This is an action to recover $30,000 death benefits under a 10-year level term life insurance policy provision issued by the defendant (Insurance Company) supplementary to a pre-existing $20,000 preferred risk whole life insurance policy on the life of one Melvyn Ladenheim (Ladenheim). Selma Ladenheim (Selma), the wife of the insured, was the beneficiary under the $20,000 whole life insurance provision and the plaintiff (Boro) was the beneficiary under the $30,000 10-year term insurance provision. Upon the death of the insured the Insurance Company paid Selma but refused to pay Boro. The case was tried, without a jury, upon a stipulation as to most of the facts and supplemented by evidence as to the remaining facts.

The following facts were stipulated:

Ladenheim was employed by Axel Bros. Inc. (Axel) from April 20, 1955 to December 31, 1959, and from January 1, 1960 to April 27, 1960 by Axel Resistors Corp. (Resistors), a subsidiary of Axel. While so employed by Axel, Ladenheim's life was insured by the Insurance Company for $20,000 under a group life insurance policy (number 14463–GTC) issued by the Insurance Company to Axel, effective May 20, 1959. By the terms of this group insurance policy Ladenheim had a conversion right within 31 days after the termination of his employment by Axel to have the Insurance Company issue to him, without evidence of insurability, an individual policy of ordinary life insurance in the amount of $20,000. On April 28, 1960, Axel gave written notice to the Insurance Company of termination of the individual insurance of Ladenheim under the said group insurance policy, effective April 27, 1960, by reason of termination of Ladenheim's employment.

On May 7, 1960 (within 31 days from termination of his employment) Ladenheim made simultaneous written applications to the Insurance Company for $20,000 life insurance on alternative bases, (a) an application for a $20,000 preferred risk whole life policy with a waiver of premiums disability benefit provision on the basis of submission of evidence of insurability, and (b) alternatively, an application for issuance of a $20,000 ordinary life policy by exercise of his conversion right under the group policy held by Axel, such alternative application to be acted upon by the Insurance Company only if said application for a preferred risk whole life policy could not be approved as applied for. Thereafter, on May 19, 1960, the Insurance Company approved Ladenheim's application for a $20,000 preferred risk whole life policy and issued to him its preferred risk whole life policy number 7275989 in the amount of $20,000, containing also a provision as to such coverage for waiver of premiums in the event of disability, and on the same date the Insurance Company returned the original application for issuance of a $20,000 ordinary life policy issuable by exercise of Ladenheim's conversion right under the group insurance policy held by Axel.

Thereafter, on May 26, 1960, Ladenheim made written application to the Insurance Company for a supplementary provision to said $20,000 policy number 7275989, providing for supplementary level term insurance, 10-year plan, in the amount of $30,000, and on June 21, 1960,

the Insurance Company approved this application and reissued its life insurance policy (number 7275989) on Ladenheim's life, with date of issue May 7, 1960, containing $20,000 preferred risk whole life coverage and $30,000 level term insurance to May 7, 1970, and also containing a provision as to each such coverage for waiver of premiums in the event of disability. This reissued policy designated Selma as the beneficiary of both the preferred risk whole life insurance in the amount of $20,000 and the level term insurance in the amount of $30,000.

In his applications dated May 7, 1960 and May 26, 1960, Ladenheim falsely represented that during the five years prior thereto he had not consulted or been treated by any physician or any practitioner and had not had in any such period any disease, whereas, as a matter of fact, Ladenheim had consulted physicians within said five-year periods for cardiovascular disease. The fact of such consultations and disease was not disclosed to or known by the Insurance Company prior to the death of Ladenheim. If the Insurance Company had known the truth as to these misrepresentations in Ladenheim's application dated May 7, 1960, it would have refused to issue, pursuant to said application, its policy number 7275989 with a coverage of $20,000 as heretofore specified, and it would also have refused to issue any insurance policy, pursuant to Ladenheim's application of May 26, 1960, covering level term insurance in the amount of $30,000.

Thereafter, on July 5, 1960, Ladenheim executed a written change of beneficiary under said policy (number 7275989), designating Boro as beneficiary as to any amount payable under the supplementary provision for $30,000 level term insurance, leaving Selma as principal beneficiary of the $20,000 preferred risk whole life insurance.

Ladenheim died on October 9, 1960 of arteriosclerotic heart disease. On October 18, 1960 Selma and Boro simultaneously submitted to the Insurance Company written claims for their respective shares in the proceeds of policy number 7275989, accompanied by a death certificate with respect to Ladenheim in support of both claims. On or about December 27, 1960, the Insurance Company paid Selma the proceeds of the $20,000 preferred risk whole life insurance coverage under said policy and refused to pay Boro the proceeds of the $30,000 term insurance coverage of said policy. At the time of said payment to Selma and said refusal to pay Boro, the Insurance Company had knowledge of Ladenheim's false representations contained in his applications for said insurance coverage, but the Insurance Company did not have knowledge of the fact that between January 1, 1960 and April 27, 1960, Ladenheim had been employed by Resistors instead of Axel.

The following facts were supplied by the evidence:

On December 27, 1960, Carl Lindstrom, the head of the Insurance Company's Claim Department, decided on behalf of the Insurance Company to pay Selma's claim of $20,000 and to deny Boro's claim in the amount of $30,000. In making this decision he had before him in December of 1960 (after Ladenheim's death) records showing the type of coverage included in Ladenheim's policy number 7275989, the beneficiaries thereof, Ladenheim's answers to the application forms for said policy, the results of a medical investigation made after Ladenheim's death indicating the falsity of Ladenheim's answers, the notice from Axel to the Insurance Company to the effect that Ladenheim's group insurance had been cancelled on April 27, 1960 by reason of termination of employment, communications from the Group Insurance Department and the Underwriting Department of the Insurance Company showing Ladenheim's coverage and stating that Ladenheim's group insurance had been terminated on April 27, 1960, and also stating that if Ladenheim had requested conversion under the group insurance coverage to preferred risk whole life insurance, such policy would have been granted to him. The policy issued to Ladenheim and the form of group insur-

ance policy issued to Axel were also produced. The latter indicated that if Ladenheim had exercised his conversion right thereunder, he would have been entitled to have issued to him, without evidence of insurability, any form of individual life insurance policy up to $20,000 *except term insurance.*

On January 5, 1961, the Insurance Company, through its investigator Alfred Eberhardt, pursuant to instructions from Lindstrom, personally notified the president of Boro that the Insurance Company was denying Boro's claim and was paying Selma's claim, explaining to Boro the Insurance Company's reasons therefor and at the same time tendering to Boro $141, representing premiums paid by Ladenheim with respect to the level term insurance, which tender Boro refused.

## Conclusion

There can be little doubt that the Insurance Company had a right to deny Boro's claim on the ground of a material misrepresentation. But Boro claims that payment to Selma was a waiver of any defense the Insurance Company might have had to payment under its term insurance contract. In support of this position, it argues that Ladenheim had lost his right of conversion under the group policy by reason of his subsequent employment by Resistors and that under no circumstances was he entitled to a policy which included waiver of premiums coverage in case of disability. With respect to this last contention, it is to be noted that the policy issued to Ladenheim included several coverages in a single document.[1] Each coverage was set forth in a separate provision of the policy, each described a type of insurance different from the others and to each was allocated a separate and different premium. For the purpose of this proceeding each may be considered as a separate contract depending upon the life of Ladenheim and joined together by certain clauses in common. (See Metropolitan Life Insurance Company v. Blum, 1959, 7 A.D.2d 488, 184 N.Y.S.2d 455, aff'd, 1961, 9 N.Y.2d 954, 217 N.Y.S.2d 225, 176 N.E. 2d 202; Equitable Life Assur. Soc. of United States v. Kaplan, 1938, 168 Misc. 24, 5 N.Y.S.2d 154, aff'd, 1940, 258 App. Div. 1038, 17 N.Y.S.2d 1005.) The coverage for preferred life insurance in the policy was the type of coverage that was issuable under the conversion right under the group policy. It is immaterial. therefore, that the same policy included three additional different types of coverage.

Referring to Boro's other claim, a distinction must be made between what was an actual fact and what the Insurance Company believed to be the fact. Whether or not Ladenheim had lost his right of conversion by reason of his employment with Resistors, is not clear and is unnecessary to decide. It is clear however, that the Insurance Company did not know of Ladenheim's employment with Resistors at the time of its decision to pay Selma. This decision was made under the belief that it was obligated to make such payment. It may have been a mistaken belief but as demonstrated above, it was supported by reasonable grounds. The question presented is whether this is sufficient to avoid Boro's claim of waiver of the Insurance Company's defense.

Boro quotes from a number of cases in which payments by insurance companies have been deemed waivers of valid defenses. These cases involved an estoppel or election or waiver arising out of a situation in which the insurance company made payment under a policy to which it had a valid defense with full knowledge of its rights, thus recognizing the continued validity of the policy. See, e. g., Indiana Lumbermen's Mutual Insurance Co. v. Janes, 5 Cir. 1956, 230 F.2d 500; Titus v. Glens Falls Insurance Co., 1880, 81 N.Y. 410; Fuessler v. Chautauqua

---

1.  (1) Life insurance; (2) waiver of premiums in case of disability with respect thereto; (3) level term insurance for 10 years, and (4) waiver of premiums in case of disability with respect thereto.

County Patrons' Fire Relief Ass'n, 1940, 260 App.Div. 991, 23 N.Y.S.2d 288. These cases obviously have no application to the present facts.

■ It would appear elementary that before one can be charged with a waiver of a right he must have full knowledge of that right. Intent to relinquish a defense cannot be inferred from the conduct of a party who has no knowledge of that defense. "This court has frequently pointed out that waiver is an intentional relinquishment of a right, and ordinarily must be predicated upon full knowledge of all the facts upon which the existence of the right depends." S. & E. Motor Hire Corp. v. New York Indemnity Co., 1930, 255 N.Y. 69, 73, 174 N.E. 65, 66, 81 A.L.R. 1318, cited by both sides. See also Armstrong v. Agricultural Insurance Co., 1892, 130 N.Y. 560, 570, 29 N.E. 991, 994; Palma v. National Fire Ins. Co. of Hartford, 1934, 240 App.Div. 454, 270 N.Y.Supp. 503. Since the Insurance Company paid Selma under the belief that Ladenheim had a right to convert, the payment was without knowledge of any defense and was not an intentional relinquishment of a right. "Ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts. Constructive notice may, however, be the legal equivalent of knowledge, in the sense that circumstances putting the insurer on notice may not be deliberately disregarded." Zeldman v. Mutual Life Ins. Co. of New York, 1945, 269 App.Div. 53, 53 N.Y.S.2d 792, 794; see Hartford Accident & Indemnity Company v. Breen, 1956, 2 A.D.2d 271, 153 N.Y.S.2d 732. The circumstances here did not require the Insurance Company to investigate the employment status of Ladenheim at the time of his application for life insurance coverage or at the time of payment to Selma. It had a right to rely upon the statements of the assured and of Axel concerning his employment. It cannot be said that it was charged with constructive notice of any defense. See

Zeldman v. Mutual Life Ins. Co. of New York, supra; Hill v. Metropolitan Life Ins. Co., 1940, 259 App.Div. 278, 18 N.Y.S.2d 753.

■ The coverage protecting Selma was an entirely different coverage from that protecting Boro and the two must be treated separately although incorporated in the same policy. Payment under one provision of a policy does not constitute a waiver of the defense of non-liability under another provision containing a separate and distinct coverage. Fidelity & Casualty Company of New York v. Jackson, 4 Cir. 1961, 297 F.2d 230; cf., Hartford Accident & Indemnity Company v. Breen, supra. This is particularly true where, as in this case, not only are the coverages under the policy different but the beneficiary under each coverage is also different. Payment to one beneficiary under one coverage could not be construed by the other beneficiary as a recognition of the validity of the other coverage. See Fidelity & Casualty Company of New York v. Jackson, supra; cf., Suetterlein v. Northern Ins. Co., 1927, 130 Misc. 420, 224 N.Y.Supp. 409, aff'd, 1929, 251 N.Y. 72, 167 N.E. 176. Furthermore, to eliminate any doubt on this score, the Insurance Company at the time of its payment to Selma expressly disclaimed all liability to Boro. Its action under such circumstances could not possibly be construed as a recognition of the validity of the term coverage of which Boro was a beneficiary. The Insurance Company might have been in error in paying Selma but this is no reason why it should be required to make another error in paying Boro. See Schwartz v. Equitable Life Assur. Soc. of United States, 1943, 266 App.Div. 231, 41 N.Y.S.2d 758, aff'd, 1944, 291 N.Y. 770, 53 N.E.2d 241; Prudential Insurance Co. of America v. Brown, 1961, 30 Misc.2d 147, 215 N.Y.S.2d 652.

The above constitutes the Court's findings of fact and conclusions of law. Settle order within ten (10) days on two (2) days' notice.