McCLELLAND v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1912.)

1. INSURANCE (§ 378*)—AVOIDANCE OF POLICY FOR BREACH OF CONDITION—WAIVER.

Though a policy of life insurance provided that it should not take effect unless at the time of the payment of the first premium the applicant should be in good health, where an agent of the company accepted such payment with full knowledge of the facts of an illness of the applicant as they were known to the attendant physician at the time, there was a waiver of the condition which would prevent the avoidance of liability on the death of the insured thereafter from such illness.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

2. INSURANCE (§ 646*)—ACTION ON POLICY—BURDEN OF PROOF.

Where, in an action on a policy of life insurance, the plaintiff produced the policy in evidence, and proved the payment of the first premium and compliance with the terms of the policy in respect to proofs of death, a prima facie case was established without affirmative proof that he was in good health at the time of the payment of the first premium, as required by the policy, and the burden was then on the defendant to show that the policy had been avoided by the condition of the insured's health at that time.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1668; Dec. Dig. § 646.*]

3. INSURANCE (§ 668*)—ACTION ON POLICY—DIRECTION OF NONSUIT—FAILURE TO PROVE TENDER OF PREMIUMS PAID.

Where, in an action on a policy of life insurance, the defendant sought to avoid the policy on the ground that the insured was not in good health at the time of the payment of the first premium, and pleaded a tender of the premium paid, renewing the offer, a nonsuit at the close of plaintiff's evidence was improper, as there was then no proof of the tender,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

without which there would be an estoppel to claim that there was no contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*]

Appeal from Trial Term, Onondaga County.

Action by Alice W. McClelland against the Mutual Life Insurance Company of New York. From a judgment of nonsuit, plaintiff appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

A. C. Stevens, of Syracuse, for appellant.

White, Cheney, Shinaman & O'Neill, of Syracuse, for respondent.

FOOTE, J. The action is upon a policy of life insurance payable to plaintiff, issued upon the life of her husband, Eugene R. McClelland, for $1,000, dated January 12, 1910. McClelland made a written application for this policy on January 12th, when he was in good health. It was delivered on January 17th and the first premium paid on the next day. On the 12th, after signing the application, McClelland went to New York City from his home in Syracuse, and returned on the evening of the 14th, ill with a cold and grippe. He was put to bed, a physician summoned, and did not again leave his house. His death occurred on February 17th.

[1] Defendant's local agent at Syracuse who had secured the application called at McClelland's store on Saturday the 15th, with the policy ready for delivery, and was then informed that McClelland was at home ill with what was thought to be a slight attack of the grippe. He called again on Monday, the 17th, and was again informed to the same effect. He then delivered the policy to a clerk in McClelland's employ at his store, who put it in McClelland's safe, where it remained until after his death. This clerk promised to, and did, secure McClelland's check for the first premium on the following day, the 18th, and the agent called at McClelland's store on that day and received the check. He was then informed that McClelland was still ill and confined to his house in bed with the grippe, but that his physician did not consider the illness serious. Pneumonia developed which the physician discovered early in February. Inflammation or degeneration of the muscular tissues of the heart followed, which was the immediate cause of death. This inflammation was preceded by gradually developing broncho-pneumonia, also described as atypical pneumonia because lacking some of its usual features, such as lung involvement. Although the presence of pneumonia had not been discovered by the attending physician on January 18th, he testified upon the trial that in his opinion, based upon the subsequent history of the case, McClelland was suffering from atypical pneumonia on that day.

The application for the policy which McClelland signed contained the following:

"All the foregoing statements and answers and all those that I make to the company's medical examiner in continuation of this application are true,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and are offered to the company as an inducement to issue proposed policy, which I hereby agree to accept and which shall not take effect unless and until the first premium shall have been paid during my continuance in good health and unless also the policy shall have been issued during my continuance in good health."

This application was subsequently attached to and became a part of the policy contract.

It was the claim of plaintiff at the trial that the delivery of the policy and the acceptance of the first premium by defendant's agent, with knowledge that McClelland was ill at home, was a waiver of the condition that it should not "take effect unless and until the first premium shall have been paid during my continuance in good health and unless also the policy shall have been issued during my continuance in good health."

A nonsuit was granted at the close of plaintiff's case, the trial court holding that, although the agent may have had power to bind the company by waiver, the evidence did not show that the agent had knowledge or notice that McClelland had the serious illness, pneumonia, which he in fact had.

The policy contained these provisions:

"This policy and the application herefor, copy of which is endorsed hereon or attached hereto, constitute the entire contract between the parties hereto."

·And:

"Agents are not authorized to modify this policy or to extend the time for paying a premium."

Plaintiff urges that the nonsuit was erroneous because the acceptance of the first premium with notice that McClelland was ill was a waiver of the condition of the policy and estopped the company from claiming that it did not go into effect, and for this plaintiff relies principally upon Ames v. Manhattan Life Ins. Co., 40 App. Div. 465, 58 N. Y. Supp. 244, affirmed 167 N. Y. 584, 60 N. E. 1106, on the opinion of Barrett, J.; Benjamin v. Palatine Ins. Co., 80 App. Div. 260, 80 N. Y. Supp. 256, affirmed 177 N. Y. 588, 70 N. E. 1095; Stewart v. Union Mutual Life Ins. Co., 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147; Wood v. American Fire Ins. Co., 149 N. Y. 385, 44 N. E. 80, 52 Am. St. Rep. 733. In the Ames Case the agent who delivered the policy and received the first premium was informed that Ostermoor, the insured, was ill at home. The agent made no attempt to ascertain the nature and extent of this illness. Ostermoor was, in fact, ill in bed with a fatal illness, from which he died four or five day later. It appears from the record that Mr. Justice Lawrence in his charge to the jury instructed them that, when the agent delivered the policy at Ostermoor's place of business, he was told that Ostermoor was at home sick. He inquired what was the matter with him, and was told by the person he inquired of that he did not know, thereupon he delivered the policy and accepted the premium. The jury were further instructed, as follows:

"Now, gentlemen, I charge you, if you believe that, you may find the condition that Ostermoor should be in good health at the time of the delivery of the policy, or else that it should have no inception, was waived. If you believe that with knowledge of the fact that Ostermoor was at home ill Zim-

merman (the agent) neglected to go into particulars to ascertain as to what was the matter with Ostermoor, that was a matter with which this plaintiff has nothing to do, unless you find that he fraudulently concealed the information from Zimmerman."

The correctness of this charge was sustained in the Appellate Division and by the Court of Appeals.

In the case at bar the agent made similar inquiries in respect to McClelland, and was informed that he was at home ill with a cold and the grippe, and that the illness was not considered serious. This information was correct according to the then understanding of the physician and the family. Here the agent acted upon this information, delivered the policy, and received the premium. McClelland was then, as was the insured in the Ames Case, at home and in bed with a fatal illness. In each case the agent knew of the illness, and, if the act of the agent in the Ames Case is to be binding upon the company as a waiver, it would seem that a like result must follow here, for the agent undertook to take the risk for his company, knowing that McClelland was ill. There was no concealment or misrepresentation as to the seriousness of the illness, and no one at that time considered it serious or dangerous. As the agent in the Ames Case acted without knowledge that the insured in that case was dangerously ill and was held to have thereby waived the condition of the policy for his company, it would seem that the same result must follow here, and that, if the authority of the Ames Case has not been overthrown, the trial court erred in holding that there was no waiver because the agent did not have knowledge or notice that McClelland's illness was in fact pneumonia, although not so known or understood by any one at the time. Moreover, in the Ames Case, the court was asked by counsel for the insurance company to charge the jury, as follows:

"The delivery of the policy by Zimmerman did not constitute a waiver on the part of defendant of any agreement that there should be no contract of insurance until a policy should be issued and accepted during the good health of the insured, as there is no evidence that Zimmerman was aware previously to or at the time of the delivery of the policy of the truth or actual facts concerning Ostermoor's condition of ill health."

The court's ruling upon this request was as follows:

"Zimmerman was not aware apparently, gentlemen, of the nature of the disease with which Ostermoor was suffering, but he had been told that he was ill at home or sick at home. Therefore I decline to charge that without that modification."

Other requests presenting the same question in different form were made and refused, by which the trial court distinctly took the position that the delivery of the policy and the acceptance of the premium was a waiver of the condition in reference to good health, although the agent had no knowledge or notice that the illness was of a serious character. The exceptions to these refusals were urged before the Court of Appeals as grounds for reversal of the judgment at considerable length upon the briefs of counsel for the insurance company, and the decision of that court affirming the judgment necessarily went to the extent of holding that it was not necessary for the agent to be advised of the serious character of the illness to accomplish a waiver.

It is urged by the respondent that the Ames Case is no longer to be followed as an authority in view of the later decision of the Court of Appeals in Russell v. Prudential Ins. Co., 176 N. Y. 178, 68 N. E. 252, 98 Am. St. Rep. 656. In that case the agent undertook to waive the condition of the policy to the effect that it should not take effect until after the payment of the first premium. The agent gave credit for the first premium, and the insured was killed in an accident during this term of credit and before the premium was actually paid. We think there was no intentional departure from the rule in the Ames Case. It appears from the opinion that the case was distinguished from prior decisions of that court dealing with waivers of various kinds in insurance cases, and especially the cases where waivers had been predicated upon "knowledge of the agent before issuing the policy that property was subject to mortgage or other lien, that the title was in a third person, that there was other and undisclosed insurance, or various conditions which would render the policy void, by its terms, if the company were not chargeable with the knowledge of its agent, by reason of information imparted to him by the insured during the preliminary negotiations."

The Russell Case was decided in October, 1903. The case of Northern Assur. Co. v. Grand View Bldg. Ass'n, 188 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, decided in January, 1902, was not referred to in the opinion. The Supreme Court of the United States in that case review in extenso the authorities dealing with the power of agents of insurance companies to waive conditions of policies, particularly conditions which affect the inception of the insurance contract, and criticise the rule prevailing in the Ames and other New York cases. Nevertheless in Benjamin v. Palatine Ins. Co., 80 App. Div. 260, 80 N. Y. Supp. 256, Mr. Justice Willard Bartlett, writing for the Appellate Division in the Second Department, held that the New York rule as declared in Wood v. American Fire Ins. Co., 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733, and other cases, must be followed by our courts, notwithstanding the views of the Supreme Court of the United States in the Northern Ins. Co. Case. The Benjamin Case arose upon a fire insurance policy containing a provision that it should be void if, with the knowledge of the insured, foreclosure proceedings should be commenced, etc. It appeared that foreclosure proceedings had been commenced more than a year before the policy was issued, but that the agent writing the policy had knowledge of the pendency of these proceedings, and it was held that his knowledge was the knowledge of the company and a waiver of the condition. The Benjamin Case was subsequently affirmed without opinion in the Court of Appeals, 177 N. Y. 588, 70 N. E. 1095.

It must be held, therefore, that the Court of Appeals does not consider the Russell Case as a departure from the rule of its former decisions, including the Ames Case, and that it intends to adhere to that rule, notwithstanding the contrary views of the Supreme Court of the United States.

[2] We are also of opinion that the learned trial justice was in error in requiring plaintiff to assume the burden of showing that Mc-

Clelland was in good health within the meaning of the policy at the time the first premium was paid. The plaintiff produced the policy and put it in evidence, proved the payment of the first premium and compliance with the terms of the policy in respect to proofs of death, and rested. Thereupon defendant, in moving for a nonsuit, took the position that the burden was upon the plaintiff to show that McClelland was in good health at the time the policy was issued and the first premium paid. The court so ruled and the plaintiff was required to give her evidence upon that subject. We think the plaintiff made a prima facie case by proving the issuance and delivery of the policy and the payment of the first premium together with compliance with the terms of the policy in respect to proofs of death, and that the burden then rested with the defendant to show that the policy did not take effect on account of McClelland's condition of health. We think the plaintiff was prejudiced by this ruling, for, had the evidence upon that subject been presented as a part of defendant's case, no doubt it would have required submission to the jury, under proper instructions, of the question as to whether McClelland was in good health within the meaning of the policy at the time the first premium was paid.

[3] There is another ground upon which it must be held that the nonsuit in this case was erroneous. The defendant had pleaded in its answer that it had tendered to plaintiff the premium received by its agent from McClelland, and the answer alleged "and the defendant now renews the said offer." But, as the nonsuit was granted at the close of plaintiff's case, there was no proof of any such tender and the record does not show any offer to return the premium. Hence, upon the present record, the defendant is in the attitude of retaining the premium paid to its agent and still claiming that the insurance contract never took effect. If the defendant retained the premium paid, after knowledge of all the facts, it would be estopped from claiming that there was no contract. Hence, in any view of the case nonsuit was improper.

The judgment must be reversed and a new trial ordered, with costs to the plaintiff to abide the event. All concur.