ESTELLE ZELDMAN, Respondent, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

First Department, March 9, 1945.

*Carl F. Hollander* of counsel (*John G. Kelly* with him on the brief; *Louis W. Dawson,* attorney), for appellant.

*Bertram Boardman* of counsel (*Miller, Bretzfelder & Boardman,* attorneys), for respondent.

CALLAHAN, J.  Plaintiff, as beneficiary, sues on a life insurance policy issued by defendant on the life of her late husband, Nathan Zeldman.  Originally, and on December 2, 1940, a five-year-term policy had been issued by defendant which granted the insured the right to convert the policy into a twenty-payment plan within a fixed period.  During his lifetime the insured availed himself of this right and applied for conversion on December 17, 1941.  The new policy was then delivered and the first premium paid on it.  The insured died on July 13, 1942.

The trial court ruled, as a matter of law, that the proof submitted had established that the insured had suffered from a serious disease and had had medical treatment, including X-ray examinations, etc., before the delivery of the term policy; that he thus had made material misrepresentations concerning the condition of his health in 1940, and had been guilty of a breach of condition in procuring the original policy, but submitted to the jury the question as to whether or not the defendant had waived its right to rescind based on such misrepresentations and breach.

Plaintiff having been successful may not appeal.  We do not pass on the question of the correctness of the ruling of the trial court with respect to the establishment of the misrepresentations or the materiality thereof.

The sole question presented to us is whether there was sufficient evidence to establish prima facie a waiver by the defendant.  The claim of waiver was based upon the following circumstances: The request for conversion from a term policy to a twenty-payment life was made by insured on a blank furnished by the company.  In this blank the insured expressly reaffirmed his statements of good health contained in his 1940 application.  In addition, the blank provided space for information concerning

insured's present health, required to be furnished only in the event the new policy was to provide disability benefits. The original term policy had provided disability benefits and waiver of premium. The application for conversion contained a question referred to as number " 6 ", which was to be answered if the original policy provided for disability benefits or waiver of premium, and the changed policy was also to so provide. Those were the conditions prevailing in the present case, and, therefore, question No. 6 was properly answered. It contained statements that " The insured is now in good health and is not now, and has not been since the date of the term policy * * * totally disabled, except ", to which was added by the applicant: " now in good health and never disabled."

Another portion of the blank contained spaces for information to be furnished if waiver of premium was desired and had not been provided in the original policy.

As the original policy did provide for disability and waiver of premium this information was not required to be furnished in the present case. Nevertheless, insured filled in a blank space following a question as to whether he had consulted or been treated by any physician or practitioner for any purpose or had been in a hospital or similar institution for treatment, observation or any other medical purpose since the prior medical examination, by excepting " treatments and operation for intestinal disturbance." He further stated that he had had no illness, diseases, injury, operation or laboratory test since the earlier examination, and was now in good health, except " as above."

The question submitted to the jury was whether the defendant had showed its intention to waive misrepresentations made as to the insured's health in connection with obtaining the original term policy by its disregard of notice concerning the existence of such misrepresentations conveyed to it by the statements last referred to.

The fact was that the insured had had an operation for the removal of his spleen in June, 1941. His statement was that he had had " treatments and operation for intestinal disturbance ", without further specifying the nature of his illness. The theory of plaintiff's claim of waiver was that, if the defendant had inquired concerning the reason for the operation had in June, 1941, defendant would have discovered the nature of the disease and thus be led to further investigation which would reveal the falsity of the representations of good health made in 1940.

The general rule applicable to waiver is that the delivery of a policy or the receipt of premiums with knowledge of a then existing breach of conditions as to the health of the insured or his treatment, will give rise to a waiver or, more properly, an estoppel. (*Bible* v. *John Hancock M. L. Ins. Co.*, 256 N. Y. 458.)

Upon receipt of knowledge during the lifetime of the insured of breach of condition, the insurer, if it desires so to do, must promptly exercise its election to void the policy. (*Steuernagel* v. *Supreme Council of R. A.*, 234 N. Y. 251; *McClelland* v. *Mutual Life Insurance Co.*, 151 App. Div. 264, 267.)

Ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts. Constructive notice may, however, be the legal equivalent of knowledge, in the sense that circumstances putting the insurer on notice may not be deliberately disregarded. The problem presented here is whether the information revealed to the insurance company was sufficient to require further inquiry and thus constitute constructive notice of the earlier misrepresentation.

In *S. & E. Motor Hire Corp.* v. *N. Y. Indemnity Co.* (255 N. Y. 69) the Court of Appeals said in relation to the rule concerning constructive notice in insurance contracts (pp. 74–75): " We need not now define the entire field of application of the principles of constructive notice. Some limits were pointed out by the court in *Skinner* v. *Norman* [165 N. Y. 565, 571]. ' We do not mean to suggest that the principles of constructive notice which obtain as to alleged *bona fide* purchasers of real estate, negotiable instruments or the like, equally apply in the negotiations between an insurance company and an applicant for insurance. It is the duty of such applicant to comply with the conditions of the policy and to give the information requisite for its validity. The company may rely on the presumption that the insured has stated all the material facts and as a rule is not bound to make inquiries.' * * *

" Suspicion that the information given it might be untrue would perhaps be sufficient notice to require further inquiry if the insurance company were asserting rights against the assured based on ignorance of the true facts. Here the assured must show that the insurer has waived its rights, stipulated in the policy, by failure to assert them earlier. If the insurance company had known the facts upon which its rights depended, failure to assert them at the proper time might permit the inference that it intentionally waived its rights. The intention

to waive those rights might even be inferred from deliberate disregard of a notice sufficient to excite attention and call for inquiry * * *.''

After stating the rule as above, the court in the case last cited determined that there were no circumstances in that case which required, as a matter of law, the inference that the insurer had intended to waive its contractual rights, and said it was doubtful whether such an inference might have been drawn even by the trier of the facts upon the facts there presented. In that case it appeared that contradictory statements concerning the age of a chauffeur had been called to the insurance company's attention long before it had attempted to relieve itself of liability, which it had the right to do if chauffeurs of less than legal age were used. The court said that while it might be assumed when the insurance company undertook the defense it had notice of facts sufficient, at least, to arouse suspicions that the chauffeur might not be as old as the law required, it was not required, at peril of losing its contractual rights, to inquire whether the information furnished concerning the chauffeur's age was false, before it undertook the defense.

In the present case, the facts claimed to put the insurance company upon inquiry are found in an application for change of term made more than a year after the company had assumed the risk, at a time when it was bound to grant the change of policy irrespective of insured's then condition of health. Unless the statement that insured had had '' treatments and operation for intestinal disturbance '', contained in the document executed December 17, 1941, was sufficient to put the company on inquiry as to whether the insured had misrepresented his condition of health on December 2, 1940, no issue of waiver existed. This is not a case where upon delivery of a policy conditioned on present good health the insurer was notified that insured was presently ill. (See *McClelland* v. *Mutual Life Insurance Co.*, 151 App. Div. 264, *supra.*) The notice applied to an illness occurring after the material date.

We fail to find any deliberate disregard of notice of any serious illness existing in December, 1940, from the fact here disclosed.

A somewhat similar situation was involved in the case of *Hill* v. *Metropolitan Life Insurance Co.* (259 App. Div. 278, Second Department). There one of the questions presented was whether certain information given the insurance company concerning illness of the insured occurring subsequent to the application was such as to put the company on inquiry as to whether an

illness had antedated the application. The court said (p. 281):
" * * * In any event, the fact that the insured was ill after
the issuance of the policy was not notice or knowledge of the
fact that he had been ill prior to the time the policy was issued
or attended by a physician within two years prior thereto, which
is the condition invoked by the defendant."

A statement that insured at some time in the year between
the issuance of the term policy and the application for conver-
sion had had " treatments and operation for intestinal disturb-
ance " did not call to the attention of the insurer the fact that
the treatments or operation were for a disease of such long
standing that it might have existed a year earlier. For instance,
an operation for an " intestinal disturbance " might refer to
an operation for appendicitis, a disease that could develop in
a period of hours or days. In the absence of more detailed
advice, how could it be said that there was any deliberate dis-
regard of notice sufficient to excite attention concerning the
condition of health as of the date when the term policy had
been issued? This would be especially so where the insured
expressly reaffirmed his original representation of good health
made in his first application, and where the answer was non-
essential, as the question of present condition of health was
not under consideration by the company at the time.

Unless we are to say that an insurance company must dis-
credit positive affirmations of good health made when the policy
is issued, and look suspiciously and searchingly upon every
statement it receives concerning subsequent illnesses so as to
ascertain whether such illnesses might possibly have had their
inception early enough to disclose falsity of the earlier affirma-
tions, this record presents no evidence of waiver As we con-
ceive the rule, no such burden is placed on the company.

We find, therefore, that the question of waiver was improperly
submitted to the jury.

The judgment should be reversed and a new trial ordered,
with costs to the appellant to abide the event.

MARTIN, P. J., GLENNON and COHN, JJ., concur; DORE, J.,
concurs in result.

Judgment unanimously reversed and a new trial ordered, with
costs to the appellant to abide the event.