Joel BERGER, Plaintiff,

v.

MANHATTAN LIFE INSURANCE CO. and American International Life Assurance Co. of New York, Defendants.

No. 91 Civ. 6854 (LBS).

United States District Court, S.D. New York.

Nov. 6, 1992.

Grossman & King, New York City (Dennis Grossman, Eileen King, of counsel), for plaintiff.

Werner & Kennedy, New York City (Michael A. Knoerzer, of counsel), for defendant Manhattan Life Ins. Co.

McCormick Dunne & Foley, New York City (John B. Foley, of counsel), for defendant American Intern. Life Assur. Co.

## OPINION

SAND, District Judge.

Plaintiff brings this action against Manhattan Life Insurance Company ("Manhattan Life") and American International Life Assurance Company of New York ("American International") seeking unpaid benefits under two life insurance policies. Jurisdiction is based on diversity under 28 U.S.C. § 1332(a)(1). Both defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff cross-moves for summary judgment against American International.

Defendant Manhattan Life states three grounds in support of its motion for summary judgment: (1) material misrepresentations in the Application render the policy void as a matter of law; (2) Berger had no insurable interest in Seppinni's life at the time the policy was applied for and issued, and therefore the policy is invalid; and (3) a condition precedent to coverage under the contract, specifically that Seppinni's health at the time of delivery of the policy be the same as represented in the application, was not satisfied, and therefore the policy never took effect. Defendant American International makes essentially the same arguments. Any factual differences between the two defendants will be discussed as they arise.

While the evidence pertaining to the first two grounds is insufficient to sustain a grant of summary judgment, the Court finds that defendants have established as a matter of law that a condition precedent to coverage under the contract was not satisfied. Summary judgment is therefore granted in favor of the defendants on that ground. Furthermore, because the Court finds that American International has not waived its right to defend the case on the grounds stated above, plaintiff's cross-motion for summary judgment against American International is denied.

## Factual Background

Joel Berger, a former practicing dentist, brings this action to recover on two key-man life insurance policies issued on the life of Stacy Seppinni, both of which name Dr. Berger as beneficiary. Mr. Seppinni, a convicted felon who had outstanding a warrant for his arrest for criminal possession of a firearm, was a long-time friend of Dr. Berger at all times relevant to this proceeding.

Berger and Seppinni purported to be partners in a dental supply company called "Visiting Dental Services", begun in 1982 and operated out of Berger's basement. (Berger Decl. ¶¶ 17–29.) Plaintiff contends that in the Spring of 1985 he decided to procure $2 million of key-man life insurance on Seppinni's life because he believed their new business was going to take off, (Berger Dep. at pp. 172, 332–333), although he admits that to his knowledge Visiting Dental Services never realized a profit (Berger dep., p. 186).

Herbert Schneider, a long time patient of Dr. Berger, was the insurance broker who solicited the two policies under which Berger seeks to recover in this action, as well as a third policy issued by U.S. Life, an insurance company which is not a defendant in this case. Schneider, a licensed insurance broker, acted as plaintiff's agent in brokering the policies; he had no employment relationship with either of the defendants.

On June 5, 1985 and July 8, 1985, Berger submitted Parts 1 and 2 of an application to defendant American International seeking insurance on the life of Seppinni and naming Berger as beneficiary in the amount of $100,000. Seppinni and Berger represented that Seppinni was in good health, answering virtually all of the questions regarding the existence of a host of medical conditions in the negative. The following

clause was included at the lower portion of Part 1 of the Application:

... the Company shall incur no liability under this application unless a policy is issued on this application and the full first premium actually paid during the lifetime and continued insurability of the Proposed Insured as stated in this application.

On August 2, 1985, Berger submitted Part 1 of an application without premium to defendant Manhattan Life seeking $150,-000 of insurance on Seppinni's life and naming Berger as beneficiary. Plaintiff concedes that two misrepresentations were made in Part 1 of the Application. The first is that Seppinni denied the use of any aliases, when in fact, Seppinni used at least one alias. The second is that Berger and Seppinni, in response to a question regarding whether they had other life insurance applications pending, identified only the American International application, when in fact only a day before the application was made to Manhattan Life they had submitted an application to U.S. Life Insurance Company for a $900,000 policy on Seppinni's life naming Berger as beneficiary. On page 2 of Part 1 of the Application there was a status quo clause, similar to the one in the American International application set out above, which provided that:

Insurance shall take effect when the policy has been issued and delivered, and the first premium for the policy has been paid, all while the health and other material conditions of the Proposed Insured(s) are the same as described in the application, unless the insurance has previously taken effect under the terms and conditions of the Conditional Receipt.

Attached to the first two pages of the document signed on August 2, 1985, there was a third page, entitled "Part 2," which bore the legend, in relevant part, "COMPLETE FOR NON–MEDICAL CONSIDERATION ON ANY INDIVIDUAL PROPOSED FOR COVERAGE. Applicable to (1) Proposed Insured IF MEDICAL PART 2 IS NOT REQUIRED." This page contained questions concerning Seppinni's medical condition and family history, and it

was left completely blank, although Berger and Seppinni's signatures appear at the bottom of the page attesting to the truth of the answers given.

On August 7, 1985, after an examination by Manhattan Life's physician, Berger and Seppinni completed and signed a form labeled "PART 2 APPLICATION FOR INSURANCE." The August 7 document did not contain a status quo clause. As in the American International application, Seppinni made a number of representations regarding his medical condition, some of which we will discuss later in more detail, generally representing himself to be in good health. Manhattan Life's medical examiner gave Seppinni a clean bill of health on August 7, 1985.

On September 29, 1985, Seppinni voluntarily admitted himself into Booth Memorial Medical Center ("the Hospital"). Neither defendant was informed that Seppinni was in the hospital. Seppinni remained in the hospital until his death on October 17, 1985.

The American International application was approved and issued on October 15, 1985. The Manhattan Life policy was delivered on October 5, 1985, and the initial premium due under the Manhattan Life policy was paid on October 4, 1985. Both companies' policies therefore had been delivered and the premiums paid while Seppinni was in the hospital with an illness that ended in his death.

Although some of the diagnoses in the authenticated hospital records have been disputed by the parties, the following facts are not in dispute: (1) when Seppinni was admitted to the hospital, he was suffering from hepatic encephalopathy, a liver disorder exhibited by neural effects on the brain resulting from an accumulation of blood toxins not cleared by a malfunctioning liver (*see* Authenticated Hospital Admitting Record, Exh. B to Kotoros Aff.); (2) when Seppinni was admitted to the hospital he was "confused," (*see* Authenticated Hospital Records, Exh. B to Brand Decl. at 000664) and "stuporous" (*id.* at 000674); (3) when Seppinni entered the hospital he had track marks over the veins in his arms and

skin-popping lesions, indicating intravenous drug use (*id.* at 000664, 000674); (4) Seppinni had a prior history of hepatitis, confirmed through hepatitis antibody tests (*id.* at 000572–000574 and 000631–000634); and (5) Seppinni was terminally ill, and died in the hospital 18 days later.

On or about November 5, 1985, Manhattan received a claim from Berger seeking benefits under the Manhattan Policy. A routine contestability investigation was conducted, revealing the facts described above. A meeting of Manhattan Life's Claim Review Committee was convened, and based upon its determination that the condition precedent to the Manhattan Life Policy had not been satisfied, the Committee denied Berger's claim. A denial claim letter was sent to Berger's counsel along with a check returning the premium plus interest. The circumstances surrounding the denial of plaintiff's claim by American International will be discussed in detail later in the opinion in reference to plaintiff's cross-motion for summary judgment against American International. This lawsuit followed.

### Discussion

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the supporting evidence demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgement is likewise appropriate where the movant demonstrates that the plaintiff has failed to present any credible evidence to support a necessary element of his claim. *Rosenthal v. Kingsley,* 674 F.Supp. 1113, 1115 (S.D.N.Y.1987).

Plaintiff's failure to present credible evidence establishing an element of his claim mandates entry of summary judgment in favor of both Manhattan Life and American International. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Berger's claim against both defendants sounds in breach of contract, an essential element of which is the existence of a viable contract. Based upon Berger and Seppinni's failure to satisfy an unambiguously stated condition precedent to coverage, it is clear that no valid contract of insurance ever came into effect. Absent a contract, Berger's breach of contract action must fail.

I. Material Misrepresentations in the Application:

 It is well settled under New York law, which governs in this diversity action, that even an innocent misrepresentation, if material, is sufficient to allow the insurer to avoid a contract of insurance, *Process Plants Corp. v. Beneficial Life Ins. Co.,* 53 A.D.2d 214, 385 N.Y.S.2d 308 (1st Dep't 1976), *aff'd* 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977). A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract", N.Y.Ins.Law § 3105(b). Materiality is usually a question of fact for the jury. However, "where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine", *Process Plants,* 385 N.Y.S.2d at 310–311. Manhattan Life has not proven materiality as a matter of law with regard to the conceded misrepresentations in the application. Furthermore, genuine issues of material fact remain with regard to the representations concerning Seppinni's health made in both the Manhattan Life application and the American International application.

The Court will address first the conceded misrepresentations concerning the use of aliases and the existence of pending life insurance policies.

A. *Regarding aliases and pending insurance applications:*

 As discussed above, it is undisputed that Manhattan Life's application required Seppinni to disclose any aliases ever used by him, and that Seppinni failed to disclose at least one alias which he used. It is

further conceded by plaintiff that Berger and Seppinni represented that they did not have any other life insurance applications pending, when in fact they had submitted an application to U.S. Life Insurance Company for a $900,000 policy on Seppinni's life naming Berger as beneficiary only a day before the application was made to Manhattan Life. Both of these statements were clearly misrepresentations.[1] Any supposed inadvertency is of no consequence, *The Mutual Benefit Life Ins. Co. v. JMR Electronics Co.*, 848 F.2d 30, 32 (2d Cir.1988).

In order to avoid the policy at the stage of summary judgment, Manhattan Life must prove as a matter of law that these misrepresentations were material; that if Manhattan Life had known the truth, it would not have issued the exact policy which it did issue, *Vella v. Equitable Life Assurance Society*, 887 F.2d 388 (2d Cir. 1989). Plaintiff argues that in order to meet this burden, Manhattan Life must make a conclusive showing of materiality based upon its rules or underwriting standards. Although plaintiff overstates the holdings in *Bloom v. Mutual of Omaha Ins. Co.*, 161 A.D.2d 1047, 557 N.Y.S.2d 614 (3d Dep't 1990) and *Wittner v. IDS Ins. Co. of New York*, 96 A.D.2d 1053, 466 N.Y.S.2d 480 (2d Dep't 1983), the Court finds that defendant has not met its burden.

*Wittner* stands for the proposition that in order to prove materiality as a matter of law, it will generally be necessary for the insurance company to substantiate the testimony of its underwriter with documentation, such as the insurance company's underwriting manuals, which clearly indicates that had the underwriter known the truth, the company would not have issued the exact same policy. Similarly, in *Borchardt v. New York Life Ins. Co.*, 102 A.D.2d 465, 477 N.Y.S.2d 167 (1st Dep't), *aff'd*, 63 N.Y.2d 1000, 483 N.Y.S.2d 1012, 473 N.E.2d 262 (1984), the court reversed a denial of summary judgment on the grounds of materiality, finding that the underwriter's testimony that he would not

have issued the policy if he had known the truth about plaintiff's diabetes was unqualified, uncontroverted and fully supported by the insurance company's underwriting rules. *See also Kulikowski v. Roslyn Sav. Bank*, 121 A.D.2d 603, 503 N.Y.S.2d 863 (2d Dep't), *appeal dismissed*, 69 N.Y.2d 705, 512 N.Y.S.2d 364, 504 N.E.2d 691 (1986).

Manhattan Life's evidence does not establish the materiality as a matter of law of either the misrepresentation regarding the alias, or the misrepresentation regarding the pending insurance applications. Most importantly, in contrast to *Wittner* and *Borchardt*, Manhattan Life's underwriter, Stahley, does not unequivocally state that if he had known the truth regarding these matters he would not have issued the exact policy that was issued. Instead, he avers in his affidavit (Stahley Aff., ¶ 6), that "these failures to disclose are material to an underwriter because they improperly narrow the scope of the underwriter's investigation" and that "either of these revelations *could have resulted* in a declination of coverage, a rated policy, or further investigation" (emphasis added). Furthermore, Manhattan Life has not made any showing that Mr. Stahley's testimony is supported by the underwriting manuals used by Manhattan Life, and counsel conceded at oral argument that he was unaware of any provision in the underwriting manual that deals with the matter of the pendency of other insurance applications. On the basis of this evidence, the Court is unable to rule that these misrepresentations were material as a matter of law.

### B. Seppinni's medical condition:

Both defendants argue that the Policies are void due to material misrepresentations made in the application regarding Seppinni's medical condition. The Court finds that the defendants have not proven as a matter of law that the statements were misrepresentations.

---

**1.** Defendant American International did not inquire about the use of aliases, and inquired only of other life insurance policies in force, of

which there were none as of the date of the American International Application.

According to the relevant statute, a misrepresentation is a "false statement as to a past or present fact, made to the insurer ... at or before the making of the insurance contract as an inducement to the making thereof." N.Y.Ins.Law § 3105(a). An insured has no obligation to volunteer information which is not directly asked for by the insurance company, nor can the answer to an ambiguous question be the basis for a claim of misrepresentation against the insured, *Vella v. Equitable Life Assurance Society,* 887 F.2d 388 (2d Cir.1989). However, if the insured does make a misrepresentation, it is irrelevant that it may have been innocently made, *Friedman v. Prudential Life Ins. Co. of America,* 589 F.Supp. 1017, 1022 (S.D.N.Y. 1984). There is no scienter requirement in the statute.

Plaintiff relies heavily on *Brayer v. John Hancock Mut. Life Ins. Co.,* 179 F.2d 925 (2d Cir.1950), for the proposition that a false statement denying a medical condition cannot be a misrepresentation if the insured did not know he had the condition. While *Brayer* is still good law, two points make the Court wary to rely on it. First, the holding in *Brayer* is tempered by the facts indicating that while the insured in *Brayer* inaccurately denied that he had pancreatitis because he did not know he had it, the insured had provided enough information on other gastrointestinal problems to put the insurance company on notice that they should investigate further. Secondly, *Brayer* has been cited only once (by the Sixth Circuit) in the forty-two years since the decision. However, the resolution of this motion does not require a resolution of the question of whether Seppinni had knowledge of his medical conditions.

Defendant Manhattan Life argues that the plaintiff made misrepresentations in response to three questions in the application.

First, Seppinni stated that he had never received advice or treatment for alcohol addiction or used alcohol to excess. This Court cannot find that this is a misrepresentation, because defendant has provided no evidence that Seppinni ever received advice or treatment for alcohol addiction, and the question of whether he used alcohol to excess, and the definition of "excess", are disputed by plaintiff, (*see* Brand Decl. ¶¶ 73–78).

Secondly, Seppinni stated that he had not had or been told he had various medical ailments within the past ten years, including liver diseases and a catchall category "any other disorder". Manhattan Life has not met its burden of proving that these statements were misrepresentations. Specifically, the parties are in dispute over whether Seppinni had cirrhosis of the liver, both at the time of the Application, and at the time of his death. While the parties do not dispute that Seppinni had a prior history of hepatitis, the parties are in dispute over whether Seppinni's prior history of hepatitis occurred within the ten year time frame to which the Application referred. While the parties do not dispute that Seppinni had hepatic encephalopathy upon his admission to the hospital, Manhattan Life has provided no evidence that Seppinni had the condition at the time the Application was initially filed. Finally, the parties are in dispute over whether Seppinni had pancreatitis, both within the ten year time frame and at the time the Application was initially filed. All of these factual disputes preclude the Court from finding that Manhattan Life has proven that Seppinni's statements were misrepresentations.

Both defendants argue that Seppinni misrepresented that he had no reason to believe that he was not in good health. As evidence of the misrepresentation, defendants note the undisputed fact that less than two months after completing the Manhattan Life application, Seppinni was admitted into the hospital on a voluntary basis. Furthermore, the hospital record indicates that Seppinni himself complained of weakness, weight loss and diarrhea for the previous three months. Plaintiff counters this by challenging the reliability of Seppinni's statements in the hospital, as well as arguing that the insurance companies' own examiners pronounced Seppinni healthy at the time the applications were filed, a fact which defendants concede. These are genuine issues of material fact which preclude summary judgment. Furthermore, "a rep-

resentation as to good health in an application for insurance, is not an affirmation of fact and does not provide a basis for rescission in the absence of proof of actual fraud." *Bronx Savings Bank v. Weigandt,* 1 N.Y.2d 545, 549, 154 N.Y.S.2d 878, 136 N.E.2d 848 (1956).

## II. Insurable Interest:

Both defendants seek summary judgment on the ground that Berger had no insurable interest in Seppinni's life at the time the policies were applied for and issued. Under New York Insurance Law, no person may obtain insurance on the life of another unless an insurable interest exists at the time the contract is made. N.Y.Ins. Law § 3205(b)(2). In the case of persons not related by blood or marriage, the statute defines an insurable interest as

a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured.

N.Y.Ins. Law § 3205(a)(1)(B).

■ Defendants argue that Berger did not have an insurable interest in Seppinni for two reasons: (a) Berger did not have a business relationship with Seppinni which would lead to a substantial economic interest in Seppinni's continued life; and (b) that as a matter of law, Berger could not have a "lawful" insurable interest in Seppinni, who was evading both a prison sentence of up to six years and a warrant for his arrest. Since it is disputed whether Berger even knew of Seppinni's legal status, the latter ground can not be resolved on a motion for summary judgment.

■ With regard to the first ground, plaintiff presents enough evidence of a business relationship to withstand a motion for summary judgment.

Defendants argue that plaintiff has produced no evidence to refute their claim that there was no business relationship: no documents relating to the partnership, no partnership bills or invoices, no evidence of bank accounts, no partnership tax returns, no business stationery, etc. In rebuttal, plaintiff testified at his deposition that Seppinni handled all the paperwork for the partnership (Berger Dep. at 148–149), and furthermore, that whatever partnership paperwork Berger had was discarded when he moved to Florida in 1987 (Berger Decl. at ¶ 43). Plaintiff has produced a business certificate for a business named "Visiting Dental Services". Mr. Neil Sisselman, a friend of Dr. Berger, asserts that Berger and Seppinni had a "long-standing business relationship", and that for twenty years they operated a dental and chemical supplies business out of Berger's basement. (Sisselman Decl. ¶¶ 4, 9.) The insurance broker, Herbert Schneider, testified that Berger and Seppinni represented themselves as a partnership, (Schneider Dep. pp. 35–37).

Because it would be inappropriate to weigh the conflicting evidence on a motion for summary judgment, the motion must be denied on this ground.

## III. Breach of a Condition Precedent:

Both defendants seek summary judgment on the ground that plaintiff failed to satisfy a condition precedent to the contract of insurance, specifically that Seppinni's health be the same when the policy was delivered and the premium paid as represented in the application.[2]

---

**2.** Both defendants also argue that apart from any contractual duty, plaintiff had a non-contractual duty of continuing disclosure. Under this doctrine, it would have been incumbent upon Berger and Seppinni to inform the insurers that Seppinni's health had changed and that he had been hospitalized prior to the delivery of the insurance policies. *Glickman v. New York Life Ins. Co.,* 291 N.Y. 45, 50 N.E.2d 538 (1943), suggests that a court should not rely on the non-contractual duty of continuing disclosure where

there is an explicit contractual duty, as there is in this case. Although the Court therefore does not rest on this ground, the defendants' position is supported by the law. The Supreme Court in *Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928), ruling that the insurance company could avoid a life insurance contract in a similar situation to the one at hand, stated that

here both by the terms of the application and familiar rules governing the formation of con-

The Court will address Manhattan Life's motion first, although the legal principles apply equally to American Life.

It is undisputed that on August 2, 1985, Berger and Seppinni signed page two of a document clearly marked "Part 1 of Application For Insurance", (Kotoros Aff., Exh. A.) Above those signatures appeared a clause containing a condition precedent, which forms the basis of contention between the parties. The clause reads:

> Insurance shall take effect when the policy has been issued and delivered, and the first premium for the policy has been paid, all while the health and other material conditions of the Proposed Insured(s) are the same as described in the application, unless the insurance has previously taken effect under the terms and conditions of the Conditional Receipt.

It is further undisputed that attached to these first two pages of the document signed on August 2, 1985, there was a third page, entitled "Part 2", which bore the legend, in relevant part, "COMPLETE FOR NON–MEDICAL CONSIDERATION ON ANY INDIVIDUAL PROPOSED FOR COVERAGE. Applicable to (1) Proposed Insured IF MEDICAL PART 2 IS NOT REQUIRED". This page contains questions on the proposed insured's medical condition and family record. It is undisputed that the answers to the questions were left completely blank, although Berger and Seppinni's signatures appear at the bottom of the page attesting to the truth of the answers given. It is further undisputed that on August 7, 1985, after a medical examination by the company's physician, plaintiff and Seppinni completed a form clearly labeled "Part 2 Application for Insurance", (Berger Decl. Exh. C). The August 7 document did not contain a status quo clause.

In order to decide whether defendant Manhattan Life has proven that the plaintiff has not satisfied the condition precedent, the Court must answer three questions: (a) what does the term "application" encompass?; (b) what does the clause require?; and (c) were the terms of the clause satisfied?

### (a) What does the term "application" encompass?

■ Manhattan Life argues that the term "application" in the status quo clause quoted above encompasses both the document signed on August 2, 1985, and the document signed on August 7, 1985, which contains the representations regarding Seppinni's health. Plaintiff argues that the term "application" is ambiguous and must be construed against the insurer, and therefore includes only the August 2, 1985 document and not the later signed "medical questionnaire". Plaintiff concedes that there was a change in the status quo of the representations concerning Seppinni's health made in the later signed document in the interval between the date of its signing and the date of the issuance of the policy.

■ While it is true that New York law "recognizes a general rule that ambiguities are to be construed strictly against the insurer", *Westchester Resco Co. v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d

tracts no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application ... If, while the company deliberates, [the insured] discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure.
277 U.S. at 316–317, 48 S.Ct. at 513.
See also *Goldstein v. New York Life Ins. Co.*, 176 A.D. 813, 162 N.Y.S. 1088 (1st Dep't 1917) and *Metropolitan Life Ins. Co. v. Goldsmith*, 201 Misc. 569, 112 N.Y.S.2d 385 (N.Y.Sup.Ct.1952).

The underwriters for both insurance companies aver that if they had known of Seppinni's change in health and his hospitalization, they could not, consistent with their underwriting guidelines, have issued the policies they issued. Because the Court does not rest on this ground, we do not address plaintiff's arguments in opposition that (1) defendants are barred from arguing a non-contractual duty because they did not assert one in their pleadings; (2) the defendants' contracts preempt any non-contractual duty of "continuing disclosure" because they contain merger clauses; (3) defendants' policies expressly preclude the insurers from asserting any misrepresentations other than those set forth in the Applications.

Cir.1987), the Court finds that there is no ambiguity in the term "application" as used in the August 2, 1985 document signed by Berger and Seppinni. Ambiguity is to be judged not "from the point of view of an easily befuddled or misled lay consumer," *In re Ambassador Group, Inc. Litig.*, 738 F.Supp. 57, 63 (E.D.N.Y.1990), but " 'by the understanding of a person engaged in the insured's course of business.' " *Id.* at 63 (quoting *Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 529 N.Y.S.2d 284, 288 (1st Dep't) *aff'd*, 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420 (1988)).

Berger and Seppinni purported themselves to be businessmen engaged in a partnership to sell dental supplies. They signed a document entitled "Part 1" of an application for insurance on August 2, which contained a status quo clause which referred to "the application". Directly above this status quo clause, another clause appears, which refers to "Part 1 and Part 2 of this application". On that same day, Berger and Seppinni left blank the portion of the document entitled "Part 2", which requested medical information. On August 7, 1985, the two men filled out and signed another form, entitled "Part 2", requesting substantially similar medical information as requested in the original "Part 2" which was left blank.

We can draw no conclusion other than that the document signed on August 7 was a substitute "Part 2", and that a person in the plaintiff's position would have considered it to be such. It is inconceivable that a businessman could think that he would not have to provide any medical information regarding the proposed insured as part of an application for key-man life insurance. Plaintiff nowhere avers that he was confused as to what the application included, or that he believed at the time that the information in the medical questionnaire was not Part 2 of the Application. Finally, plaintiff does not rebut the testimony of Steve Kotoros, Manhattan Life's Vice President of Insurance Administration, that the "non-medical" Part II, the part 2 attached

to the August 2 document, is used only when no medical examination is required, and the "medical Part II", the document signed on August 7, is used where an examination is required, (Kotoros Suppl. Aff. ¶¶ 8–9.) The Court finds that the term "application" is not ambiguous, and encompasses both the document signed on August 2, and the one signed on August 7.

### b. What does the status quo clause require?

Manhattan Life argues that the status quo clause is unambiguous, and by its clear terms provides that the insurance does not take effect until the policy is delivered, the first premium is paid, and the "health and other material conditions of the Proposed Insured(s) are the same as described in the application." [3] Plaintiff argues that the clause is ambiguous, but does not provide any plausible alternative reading.

Under New York law, an insurer may require—as a condition precedent to coverage becoming effective under a policy—that there be no change in the insured's health between the date of application and the date of delivery of the policy and collection of the premium. *Levande v. Canada Life Assurance Co.*, 23 A.D.2d 669, 257 N.Y.S.2d 323 (2d Dep't 1965), *aff'd*, 17 N.Y.2d 645, 269 N.Y.S.2d 430, 216 N.E.2d 594 (1966); *Klein v. Prudential Ins. Co. of America*, 221 N.Y. 449, 117 N.E. 942 (1917).

In both *Levande* and *Klein*, the insurance policies in dispute had substantially similar condition precedent clauses to the ones contained in the Manhattan Life and American International policies. In *Levande*, the clause provided that insurance

"should not take effect until its receipt by [the insured] and the payment of the first premium in full *while the facts concerning the insurability of his life were the same as described in Parts I and II of the application.*"

257 N.Y.S.2d at 324 (emphasis added.)

The court found a breach of the condition precedent, because the proposed insured's

---

**3.** Because defendant relies only on the status of Seppinni's health, the Court will not address plaintiff's argument that the term "material con-

ditions" is invalid because it requires reference to documents extrinsic to the Policy.

health had changed for the worse in the time between the application and the delivery of the policy. The *Klein* court made a similar finding, construing a condition precedent clause which provided that "said policy shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application." *Klein*, 221 N.Y. 449, 451.

Based on the above, and finding that plaintiff has provided no plausible alternative reading, the Court finds that the condition precedent clause is unambiguous and requires that in order for the insurance to take effect, Seppinni's health had to be the same as described in the Application at the time the Manhattan Life Policy was delivered and the first premium paid.

 c. Were the terms of the condition precedent satisfied?

█ Plaintiff concedes that there were changes in the answers to questions regarding Seppinni's state of health in the document signed on August 7, which the court has found was part of the Application. Plaintiff further admits that when Seppinni was admitted to the hospital, he had hepatic encephalopathy, was in a confused and stuporous state, and evidenced the use of intravenous drugs. Certainly these conditions represent a change in Seppinni's state of health from that represented by Seppinni in the application. On this basis, the Court finds that the condition precedent was breached, and no insurance policy ever came into effect. Because the lack of an insurance contract deprives plaintiff of a cause of action, Manhattan Life's summary judgment motion is granted.

### American International

Although American International presents essentially the same argument on the condition precedent ground, the circumstances underlying its insurance contract are somewhat different. Plaintiff concedes that the American International application consists of two parts, and that both parts are covered by the status quo clause,

(Plaintiff's Brief in Opposition p. 39). The clause provides that

> Except as provided in a duly executed Conditional Receipt bearing the same date as this application, the Company shall incur no liability under this application unless a policy is issued on this application and the first full premium actually paid during the lifetime and continued insurability of the Proposed Insured as stated in this application.

(Berger Exh. D.)

█ In opposition to American International's motion for summary judgment, plaintiff argues that this clause is inapplicable, because plaintiff's suit seeks liability under the policy, and not under the application, and this clause protects only against liability under the application. Plaintiff's argument is ill-founded. Even if the foregoing were a reasonable interpretation of this clause, it does not avail plaintiff because it does not affect the fact that the *policy* would only be effective if it were issued on the application *"during the continued insurability of the Proposed Insured as stated in the application."* Because the condition precedent, the continued insurability of the Proposed Insured, was never satisfied, there is no policy under which plaintiff can assert liability.

### Plaintiff's Cross–Motion

█ Sometime after oral argument on defendants' motions for summary judgment, plaintiff cross moved for summary judgment against American International on two grounds. First, plaintiff argues that American International waived any rights to contest the policy because it did not formally deny the payment on the claim until the institution of this action, nearly six years after Seppinni's death. Second, plaintiff argues that American International is estopped from demanding rescission of the contract because it did not tender the premium paid by plaintiff prior to bringing the motion for summary judgment.

The facts surrounding American International's denial of plaintiff's claim are largely undisputed, but they must be set out in some detail.

Plaintiff filed a timely claim and notice of death which American International received on November 6, 1985. American International began an investigation, because the insured died two days after the issuance of the policy. A formal claim denial letter was never sent to plaintiff by American International, nor was the premium which plaintiff paid ever tendered back to plaintiff.

On December 4, 1985, American International informed the plaintiff by letter that it would be conducting this investigation. The investigator, John Healy, worked on behalf of Manhattan Life, American International, and U.S. Life, a third insurance company, not a defendant here, which had also issued a policy on Seppinni's life naming Berger as beneficiary. Plaintiff's former counsel, the firm of Deegan & Scibilia, exchanged correspondence on the investigation from December 4, 1985, through October 23, 1986 with Healy or other representatives of American International. On April 4, 1986, Healy provided Scibilia with interrogatories for plaintiff to answer, because Scibilia would not allow Healy to interview plaintiff. Scibilia advised his client not to answer the interrogatories, and they were never answered. Plaintiff submitted to a deposition only after the start of the present litigation.

In late 1986, the law firm of McCormick, Dunne & Foley was retained by both American International and U.S. Life. Plaintiff was aware that the firm represented both companies.

In February 1987, plaintiff instituted suit against U.S. Life, the company which had issued by far the largest policy, and the only company which had issued a policy before Seppinni was hospitalized with his fatal illness. The case was settled in November, 1990.

The present suit was instigated by the plaintiff on October 11, 1991, just within the statute of limitations period. In its answer to the complaint, American International formally denied the claim, demanded judgment against the plaintiff and dismissal of the complaint, and counterclaimed for rescission, offering to "do whatever is necessary for rescission." Because the Court finds no triable issue of fact regarding whether American International acted in any way to waive its right to challenge the policy, plaintiff's cross-motion for summary judgment must be denied.

Waiver has been defined as the "intentional relinquishment of a known right" and it "should not be lightly presumed." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 525 N.Y.S.2d 793, 520 N.E.2d 512 (1988). Plaintiff has presented no facts which suggest that it was ever American International's intent to waive any of its rights or defenses with regard to the policy. American International made clear that it was investigating plaintiff's claim, and that it could not approve or deny the claim until that investigation was complete. Plaintiff does not deny that he never answered the interrogatories posed to him, and that he did not consent to a personal interview until he was deposed in connection with this suit.[4] Furthermore, American International is not estopped from challenging the validity of the policy because plaintiff did not rely to his detriment on any action of the defendant.[5]

---

**4.** Contrary to plaintiff's contention in his reply brief, American International does not rely on any "oral agreement" regarding denial of the claim or holding this case in abeyance pending the outcome of the case against U.S. Life. Instead, American International makes the assertions, which remain undisputed, that plaintiff knew that an investigation was ongoing, and that there are no facts which suggest that American International misled the plaintiff into believing that the investigation had been completed and that the claim would be paid. Plaintiff's reference to the CPLR section governing stipula-

tions between parties in an action is inapplicable to this situation.

**5.** The only instance of reliance which plaintiff alleges is that he disposed of documents relating to the insurable interest issue. This issue, as discussed above, is not dispositive of the motion, as the Court has found that no contract ever came into effect because of the plaintiff's failure to satisfy a condition precedent to coverage. Therefore, even if plaintiff did rely on American International's failure to issue a claim denial letter, this reliance was not to plaintiff's detriment.

The cases that plaintiff cites in support of its first argument are inapposite. Plaintiff relies most heavily on *Steuernagel v. Supreme Council of Royal Arcanum*, 234 N.Y. 251, 137 N.E. 320 (1922), for the proposition that an insurer's failure to formally deny a claim after six years estops the insurer as a matter of law from challenging the policy. Plaintiff's interpretation of *Steuernagel* is far-fetched at best.

In *Steuernagel*, a woman sought to recover on a life insurance policy held by her missing husband. Soon after his disappearance, the insurance company told her she would be able to recover if she continued to pay premiums for some length of time. The Court found that the insurance company was estopped from denying her claim after six years because she had continued to pay premiums over that entire time period and she was *never informed* that there was any possibility that her claim would not be paid. The Court explained "[t]here was no hint in all these years that her standing was contested. The first suggestion of a contest came in May 1916, when she made tender of the dues then payable. Six years had then elapsed since her husband's disappearance...." 234 N.Y. at 255.

Clearly the holding in *Steuernagel* cannot simply be superimposed on the case before the Court. It is disingenuous to suggest that Dr. Berger did not know that his claim was being investigated, or that he did not know the general areas into which inquiry was being made. His refusal to answer interrogatories or be interviewed brought the investigation to an impasse until he himself instituted litigation, and he cannot use his own stalling tactics to estop American International from defending its claim. The cases plaintiff cites in support of his argument that a subsequent delay caused by an insurer supersedes any earlier delay caused by an insured, such as *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979), occur in the context of a statutory requirement of prompt denial in the accident-liability insurance field. There is no such statutory requirement regarding life insurance.

■ Plaintiff's second argument is more forceful, yet still unavailing. Plaintiff argues, relying on *McClelland v. The Mutual Life Ins. Co. of New York*, 151 A.D. 264, 135 N.Y.S. 735 (4th Dep't 1912), that American International did not tender back the premium paid before it moved for summary judgment, and therefore cannot argue that the contract never existed. A number of clarifications are in order.

■ Under New York law, where an insurer defends against a claim of coverage on the ground that the company was induced to issue the policy by fraud or on another ground of forfeiture and the policy is therefore void from its inception, the insurer is not required to tender the premium prior to trial on the action. In contrast, where an insurer declares an executed rescission, sues to rescind the contract for fraud or on other grounds, or makes an affirmative demand for rescission in defense of a suit, equity requires that the insurance company tender back the premium prior to trial, or at the time of trial if the insurer acquires knowledge of the ground for rescission after the insured's death. *Perry v. Metropolitan Life Ins. Co.*, 168 A.D. 275, 153 N.Y.S. 459 (4th Dep't 1915); *Bavisotto v. United States*, 18 F.Supp. 355 (W.D.N.Y.1937). *Panettieri v. John Hancock Mut. Life Ins. Co. of Boston*, 266 A.D. 872, 42 N.Y.S.2d 317 (2d Dep't 1943).

In order to decide whether American International is estopped from arguing that the contract never came into existence because it has not tendered back the premium, it is necessary to properly characterize the nature of American International's response to plaintiff's suit. American International has taken two positions. First, it has defended on the ground that the policy is void because it was issued on the basis of fraudulent misrepresentations concerning Seppini's state of health and continued insurability.[6] American International also

---

**6.** Plaintiff incorrectly asserts that defendant has not made an argument on the grounds of fraud.

defends on the ground that the contract never came into effect at all, because Berger did not have an insurable interest in Seppinni's life, and because a condition precedent to the policy's existence was not satisfied. These are defenses, and an insurer is not required to tender premium when it defends on these grounds. Secondly, however, American International has counterclaimed for rescission on these same grounds. Clearly, rescission requires that American Life tender back the premium. Although American International did plead in its answer that it would "do whatever else it ought to do for purposes of such rescission", there is no evidence of any actual tender of the premium.

The facts of the *McClelland* case, upon which plaintiff relies exclusively in support of this argument, are significantly different from those in the case at bar. In *McClelland,* an agent of the insurance company issued a life insurance policy and accepted a premium, with the knowledge that at the time of issuance, the proposed insured was ill. The insurance company sought rescission, claiming that no contract had ever come into existence. There was no defense of fraud or misrepresentation. The Court found that the knowledge of the agent was imputed to the insurance company, and the company had thereby waived the right to challenge the policy on the ground that the plaintiff had not satisfied a condition precedent clause regarding continued insurability very similar to the one in the American International contract. In contrast, in this case there has been *no waiver* by the insurance company of the condition precedent, and the plaintiff's failure to satisfy it remains a viable defense to plaintiff's claim of coverage.

The *McClelland* court went on to rule that the lower court's grant of non-suit against the plaintiff was also improper because the insurance company should not have been allowed to have the policy rescinded where it had pleaded tender, but there was no evidence of actual tender. In

this regard, the Court stated that "[i]f the defendant retained the premium paid, after knowledge of all the facts, it would be estopped from claiming that there was no contract." 151 A.D. at 271, 135 N.Y.S. 735.

*McClelland* suggests that if American International demanded rescission only and made no defense regarding fraud or other grounds, the Court would be unable to grant rescission because, under equitable principles, the company would have had to make actual tender prior to this dispositive motion. The offer of tender in a pleading cannot be considered the same as actual tender, of which there is no evidence in this case.

The Court must therefore determine whether tender is necessary where an insurer both defends on the grounds of fraud and other grounds, specifically that no insurable interest existed and that a condition precedent was not satisfied, and also affirmatively demands rescission on these same grounds. The Court must confront this issue by virtue of American International's failure to actually tender return of the premium, which it stated it was willing to do in the answer.

We are unaware of any New York case squarely on point. The Court is guided by the reasoning in *Austin v. Mutual Reserve Fund Life Ass'n,* 132 F. 555 (D.Mass.1904), a case applying New York law and cited with approval in *Bavisotto,* where the defendant insurance company did not demand rescission, but defended solely on the ground that a condition precedent had not been satisfied. There the court explained:

Only one issue is made by the defendant corporation. No claim is made by virtue of any alleged fraud, warranty or representation. Its case is rested entirely on the provisions in the applications and the policies that the policies were not to be in force, and that the contracts should not take effect, until the policies were delivered to [the insured], who was the applicant therefor, and whose life was in-

---

This is plainly incorrect. Defendant alleges fraudulent misrepresentations made with regard to Seppinni's state of health. Defendant furthermore argues that plaintiff was under a

continuing duty of disclosure, and that failure to disclose that Seppinni was in the hospital at the time the policy was issued was fraudulent.

sured, while he was in good health, nor until the first premiums were paid while also he was in good health.

The findings accompanying this opinion state the premiums received by the defendant corporation have never been returned, and no offer has ever been made to return them. This, however, is not of consequence, because, under the settled rule of law of insurance, if the policy was never in force, it, of course, never attached, and no action could be brought upon it whether the premiums were returned or not. The remedy for a return of the premiums, according to the same settled rules, would be by an action therefor.

The *Austin* court granted judgment for the plaintiff because the company had subsequently accepted a second premium on the policy, which served to extend the period of the policy past the date specified in the incontestability clause. Nevertheless, the Court finds persuasive the reasoning of the passage quoted above.

It would be unfair to penalize the defendant for not having made actual tender before the motion for summary judgment when its essential posture is one of defense against plaintiff's claim on fraud and non-fraud grounds, and not a posture of affirmatively seeking rescission of the contract. This is especially true where, in connection with its counterclaim for rescission, the defendant made clear its intent to tender.

Because the Court finds that American International has not waived its right to defend against the claim through delay or failure to tender, plaintiff's cross-motion for summary judgment must be denied. Furthermore, because American International has proven as a matter of law that the condition precedent to coverage was not satisfied, American International's motion for summary judgment dismissing the complaint is granted. Since American International clearly intended to tender the premium, and because the Court grants the motion on a ground other than fraud, it would be inequitable to allow American International to retain the premium. The Court therefore orders the defendant to tender the premium plus interest at this time.

### CONCLUSION

For the above stated reasons, defendants' motions for summary judgment are granted in their entirety. Plaintiff's cross-motion for summary judgment is denied. Defendant American International is ordered to tender the premium plus interest to this date.

SO ORDERED.